The STATE of Texas, Appellant,

v.

Susan Bozeman WOFFORD, Carroll Edward Wofford,[1] Benny Charles Jenkins, Clark Anthony Wilson, and Valley Vending, Inc., Appellees.

Nos. 03–99–00489–CR to
03–99–00500–CR.

Court of Appeals of Texas,
Austin.

Nov. 30, 2000.

---

1. Three indictments allege appellee's first name as "Carrol." There has been no suggestion of a change of name. The district clerk and the parties have frequently referred to the appellee as "Carroll." We adhere to the spelling in the indictments.

Dan M. Hurley, Lubbock, Aaron R. Clements, Hurley, Sowder & Reyes, Lubbock, William A. Willms, Willms, Smith & Associates, L.L.P., Austin, for appellees.

John Cornyn, Atty. Gen., Andy Taylor, Asst. Atty. Gen., Shane Phelps, Deputy Atty. Gen., Gregory S. Coleman, Sol. Gen., Idolina Garcia McCullough, Asst. Sol. Gen., Stephan Smith, Austin, for appellant.

Before Justices KIDD, PATTERSON and ONION.*

JOHN F. ONION, Jr., Justice (Retired).

Pursuant to appellees' motions to dismiss the indictments, the trial court conducted a pretrial evidentiary hearing. The trial court dismissed each indictment. The State appeals. See Tex.Code Crim.Proc. Ann. art. 44.01(a)(1) (West Supp.2000). The motions to dismiss were based on the claim that section 47.01(4)(B) of the Texas Penal Code[2] is unconstitutionally void for vagueness as applied to appellees' situation—the possession, operation, and use, etc., of modified video machines known as "eight liners." The void-for-vagueness argument in appellees' motions to dismiss is based solely upon a claim of violation of due process of law under the Fourteenth Amendment to the United States Constitution, thus presenting only a federal constitutional issue. The trial court granted the pretrial motions to dismiss on this basis, expressly citing Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Section 47.01(4)(B), declared unconstitutional by the trial court's orders, is an express exclusion from the statutory definition of a "gambling device." See Tex. Penal Code Ann. § 47.01(4) (West Supp. 2000). Section 47.01(4) provides:

(4) "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

(A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player ex-

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.Gov't Code Ann. § 74.003(b) (West 1998).

2. See Tex. Penal Code Ann. § 47.01(4)(B) (West Supp.2000).

*clusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.*

Tex.Penal Code Ann. § 47.01(4)(A), (B) (West Supp.2000).[3] (Emphasis added.)

### Issue

In its first issue, the State asks: "Is the exclusion to the definition of a gambling device unconstitutionally vague as applied to these defendants?" We hold that it is not and set aside the trial court's orders dismissing the indictments.[4]

### The Twelve Indictments

In each of the twelve indictments, appellees were individually charged with engaging in organized criminal activity under section 71.02(a)(2) of the Texas Penal Code[5] by having committed certain Class A misdemeanor gambling offenses under either sections 47.03, 47.04, or 47.06 of the

Penal Code. *See* Tex.Penal Code Ann. §§ 47.03, 47.04, 47.06 (West 1994).[6]

Most of the indictments are multicount indictments, and most, but certainly not all, allege a gambling device, to wit: "an eight liner," sometimes with a further description such as "All Fruit Bonus video eight-liner machines." The indictments appear regular and valid on their faces. There was no exception to a defect of form or substance in the indictments. *See* Tex. Code Crim.Proc.Ann. arts. 27.08, 27.09 (West 1989). Further, we find no motions to set aside [quash] the indictments. *See* Tex.Code Crim .Proc.Ann. art. 27.03 (West 1989). And the record does not reflect any pretrial applications for writ of habeas corpus attacking the constitutionality of the gambling statutes underlying the offenses charged in the indictments. Instead, appellees have used pretrial motions to dismiss the indictments on a constitutional basis as their procedural vehicle. *See* 42 George E. Dix and Robert O. Dawson, *Criminal Practice and Procedure*, § 30.66 at 127 (Texas Practice 1995); *cf. State v. Terrazas*, 962 S.W.2d 38, 41–42 (Tex.Crim. App.1998).[7] Appellees have directed their federal constitutional attack to section 47.01(4)(B) describing devices that are ex-

---

**3.** Paragraph B of section 47.01 has been the subject of other recent litigation, civil and criminal, in various procedural contexts. *See, e.g., Owens v. State,* 19 S.W.3d 480 (Tex. App.—Amarillo 2000, no pet.); *Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators,* 997 S.W.2d 651 (Tex.App.—Austin 1999, no pet.); *Warren v. Aldridge,* 992 S.W.2d 689 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Brinkley v. Texas Lottery Comm'n.,* 986 S.W.2d 764 (Tex.App.—Austin 1999, no pet.); *Weaver v. Head,* 984 S.W.2d 744 (Tex.App.—Texarkana 1999, no pet.).

**4.** The State raised a second issue which we do not reach. Moreover, it is doubtful that this issue is germane to the trial court's rulings on the pretrial motions to dismiss.

**5.** *See* Tex. Penal Code Ann. § 71.02(a)(2) (West Supp.2000). The statute provides in pertinent part:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a

combination or as a member of a criminal street gang, he commits or conspires to commit one or more of the following:

(2) any gambling offense punishable as a Class A misdemeanor.

Tex. Penal Code Ann. § 71.02(a)(2) (West Supp.2000).

The current code is cited for convenience. The instant offenses are alleged to have occurred on or about June 5 through June 22, 1998. The applicable statute is Act of May 10, 1997, 75th Leg., R.S., ch. 189, § 9, 1997 Tex. Gen. Laws 1045, 1048 since amended. The 1999 amendments did not change the basic law applicable. These amendments are not material to the instant prosecutions.

**6.** In appellees' motions to dismiss the indictments, we find reference only to section 47.06 as the gambling statute underlying the charged offenses of organized criminal activity.

**7.** The State does not challenge the authority of the appellees to proceed as they have.

cluded from the statutory definition of a gambling device.

The State Constitution delegates to the legislature law-making authority including the right to define crimes and fix penalties therefor. *See* Tex. Const. art III, § 1; *McNew v. State*, 608 S.W.2d 166, 176 (Tex. Crim.App.1980) (op. on reh'g). It is also an appropriate legislative function to define the words contained in a statute and to prescribe rules for their interpretation. *See* 1A Norman J. Singer, *Statutes and Statutory Construction* § 20.08 at 90 (Sutherland Statutory Construction, 5th ed.1993). It has been said that when the legislature provides a definition for a term, it is that definition to which a person should conform his conduct. *See City of Seattle v. Koh*, 26 Wash.App. 708, 614 P.2d 665, 668 (Wash.App.1980).

■ However, the definitions contained in section 47.01 "do not constitute criminal offenses of and in themselves." Gerald S. Reamey, *Criminal Offenses and Defenses in Texas* 190 (2d ed.1993). The section 47.01 definitions are not elements of the gambling offenses in Chapter 47 of the Penal Code, but are grouped rather for simplification, accessibility, and uniformity of meanings where such was intended. *Cf. Victory v. State*, 547 S.W.2d 1, 4 (Tex. Crim.App.1976). "An element of the offense means: (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense." Tex.Penal Code Ann. § 1.07(a)(22) (West 1994). "(A) an exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . .'" Tex.Penal Code Ann. § 2.02(a) (West 1996). Section 47.01(4)(B) is not labeled as an exception to any offense. Thus, it is not an element of an offense or a labeled exception as required. Moreover, this provision is not a defense or an affirmative defense because it is not so labeled as required by the Penal Code. *See* Tex. Penal Code Ann. §§ 2.03, 2 .04 (West 1994).

**Factual Background**

The trial court afforded appellees a pretrial evidentiary hearing. The record reveals that appellees Susan and Carrol Wofford are the operators of Joe's Grocery in San Angelo where the eight-liner machines were in use when seized by law enforcement personnel. Appellees Benny Charles Jenkins and Clark Anthony Wilson operate Valley Vending, Inc., which by agreement or lease, placed the eight-liner machines in Joe's Grocery.

Ben Halamicek, an electronic technician employed by Valley Vending, testified that the company leased juke boxes, pool tables, video and other games to business establishments in and around San Angelo. Halamicek stated that after the 1995 amendment to section 47.01(4) and in response to customer demand, the company began installing eight liners at various locations.

Halamicek testified that eight liners are electronic machines resembling a slot machines and are commonly called eight liners because they can pay out in eight separate ways—three across, three down, and two diagonally. These machines operate by displaying a three-by-three-grid of symbols or "icons" with a winning combination being any three matching symbols in a line. The machines accept paper currency of one to twenty dollars; some will accept quarters. Halamicek explained that the player who inserts a dollar bill in an eight liner is credited with one hundred points. An individual begins play by betting any number of points ranging from a minimum of eight points to a maximum of sixty-four points which are divided equally among the eight possible lines. A player then presses a button on the machine which activates an internal computer that randomly determines the final outcome. If one or more of the eight lines on the machine ends with three matching symbols—such as fruits, bells, or numbers,—a player wins points according to a payoff schedule. Some combinations yield a higher return than others. Upon completing a

game, a player pushes a print button which produces a coupon with a number of points that can be redeemed for gift certificates or merchandise in the store where the machine is located. Unmodified eight liners could conceivably pay far in excess of ten times the amount of the wager or five dollars.

Some time after the installation of eight liners by Valley Vending, questions arose about their legality. Jenkins and Halamicek consulted with private lawyers, the local district attorney's office, the Tom Green County Sheriff's Office, and others to determine how to bring Valley Vending's eight liners into compliance with the law.

After these consultations, Halamicek modified Valley Vending's eight liners at an approximate cost of $30,000. The machines were modified so that the amount of points credited to the ticket or coupon dispensing counter could never exceed ten times the amount "played" or a maximum of five dollars for a single play of the game as required to meet the exclusion from gambling devices set forth in section 47.01(4)(B). Halamicek admitted that a player could win more than five hundred points in a single play, but explained that the excess points would roll over to a separate counter or display on the machine that awards replay credits. This would allow the player to continue his play on the machine and possibly allow the player to win additional points that would be added to the coupon to be redeemed for merchandise. Halamicek acknowledged that there was a display on the machine that would reflect the points on the ticket dispensing counter and another to reflect the replay credits. Halamicek stated that the replay feature could be eliminated but his consultants informed him this was not necessary to make "the operation of the machine legal." Halamicek acknowledged that later there was some confusion or misunderstanding concerning the modifications. At some point, he believed that the local district attorney's office withdrew its

approval of the modifications. Halamicek estimated that Valley Vending had fifteen modified eight-liner machines operating at Joe's Grocery on June 22, 1998, when these machines were seized during the execution of a search warrant.

Sergeant David Jones of the Texas Department of Public Safety (DPS) was not present at the evidentiary hearing. Jones's search-warrant affidavit, marked appellees' exhibit No. 7, was introduced into evidence. In the affidavit, Jones described in great detail a slot machine video gambling machine known as an "eight liner." He described the game as one of chance because the machine's computer randomly determines the configuration of the symbols to be displayed on each reel.

Jones's affidavit also reflected his different visits to Joe's Grocery and his playing of some of the fifteen machines during June 1998. Jones recognized that the eight liners had been modified and his description was similar in some respects to Halamicek's testimony. On June 5, 1998, Jones won "ticket credits" or coupons in excess of $18.00 and took them to the grocery's cashier who informed him that he could purchase any merchandise in the store (except beer and cigarettes) including lottery tickets or that the tickets could be redeemed for money to be placed back into the machine by the cashier. Jones bought 15 lottery tickets (Lotto), one "cash five" ticket for the June 6, 1998 drawing, and requested that the remaining two dollars be returned to the machine. The cashier placed Jones's ticket credits in a box, took $2.00 from the store's cash register and placed it in the machine so Jones could continue to play.

On June 9, 1998, according to the affidavit, Jones again visited the store and observed one machine with a new feature called "skill time" which allows the player to push a "stop" button and interrupt the thirty second shuffling cycle of the machine. Despite it name, Jones stated no skill was involved in this feature because the computer still randomly determined

what symbols would be displayed. The balance of the affidavit described other visits, after which Jones concluded that all fifteen machines in Joe's Grocery were gambling devices under the definition in section 47.01 of the Penal Code.

At the conclusion of the pretrial hearing, the trial court granted the appellees' motions and dismissed all twelve indictments.

### Constitutional Standards

In determining a statute's constitutionality, we begin with a presumption of the statute's validity. *Ex parte Anderson,* 902 S.W.2d 695, 698 (Tex.App.—Austin 1995, pet. ref'd); *Skillern v. State,* 890 S.W.2d 849, 860 (Tex.App.—Austin 1994, pet. ref'd). We presume that the legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due regard for constitutional requirements. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978). It is the challenger's burden to show that the statute is unconstitutional. *Id.; Anderson,* 902 S.W.2d at 698. Every reasonable intendment and presumption is made in favor of the constitutionality and validity of the statute. *Skillern,* 890 S.W.2d at 860. The statute must be upheld if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979). Constitutional issues will not be decided upon a broader basis than the record requires. *State v. Garcia,* 823 S.W.2d 793, 799 (Tex.App.—San Antonio 1992, pet. ref'd).

An attack on a statute as being "overbroad" is normally reserved for complaints concerning violations of the First Amendment to the United State Constitution. *Bynum v. State,* 767 S.W.2d at 769, 772 (Tex.Crim.App.1989); *Garcia,* 823 S.W.2d at 797. The United States Supreme Court has not recognized an "overbreadth" doctrine outside the limited context of the First Amendment. *United States v. Salerno,* 481 U.S. 739, 745, 107

S.Ct. 2095, 95 L.Ed.2d 697 (1987). There are no complaints in the instant case about the violation of any First Amendment rights. Thus, the "overbreadth" doctrine is inapplicable here. Moreover, a facial challenge to a statute on the basis of vagueness will be upheld only if the statute is impermissibly vague in all its applications. *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987). A facial challenge is the most difficult because the challenger must establish that no set of circumstances exists under which the statute would be valid. *Briggs v. State,* 789 S.W.2d 918, 923 (Tex.Crim.App.1990); *Anderson,* 902 S.W.2d at 699. We conclude a facial challenge is not involved here as the trial court's order upheld the allegations that the statute was void for vagueness "as applied" to appellees.

When challenging the constitutionality of a statute, a defendant must show that in its operation, the statute is unconstitutional as applied to him in his situation; that it may be unconstitutional as to others is not sufficient. *Bynum,* 767 S.W.2d at 774; *State v. Fry,* 867 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1993, no pet.). When no First Amendment rights are involved, the reviewing court should not consider hypothetical situations, but should scrutinize the statute only to determine whether it is impermissibly vague as applied to the challenging party's specific conduct or situation. *Bynum,* 767 S.W.2d at 774; *Briggs,* 740 S.W.2d at 806.

### Two–Pronged Inquiry

We employ a two-pronged inquiry in examining a criminal statute for vagueness. The first inquiry is whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law. *Fry,* 867 S.W.2d at 401. Such person must be given a reasonable opportunity to know what is prohibited. *Grayned,* 408 U.S. at 108, 92 S.Ct. 2294. A statute that fails to give notice poses a "trap for the innocent,"

*United States v. Cardiff,* 344 U.S. 174, 176, 73 S.Ct. 189, 97 L.Ed. 200 (1952), and "violates the first essential of due process." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). A statutory provision, however, need not be mathematically precise; it need only give fair warning in light of common understanding and practices. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294.

 The second inquiry is whether the statute in question provides sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement. *Bynum,* 767 S.W.2d at 773; *Anderson,* 902 S.W.2d at 699. A statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Either the lack of notice or the lack of guidelines for law enforcement provides an independent ground for finding a statute void for vagueness. *Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim.App.1985).

The trial court found section 47.01(4)(B) failed both prongs of the inquiry. It first ruled that the attempt to describe contrivances which are not gambling devices "woefully fails" to give sufficient information to an ordinary, law-abiding citizen who wants to comply with the law. Second, it found that the section does not provide clear guidelines to law enforcement authorities, who are "in a quandary" attempting to enforce this law. Additionally, the trial court identified the pivotal issue: ambiguity about whether awarding replay credits, in addition to the maximum value of noncash prizes, violates the statute as written.[8]

## Discussion

 A determination that a statute is confusing or difficult to understand is insufficient to render it unconstitutional. *Dahl v. State,* 707 S.W.2d 694, 700 (Tex. App.—Austin 1986, pet. ref'd). A statute is not vague merely because it is imprecise. *Tex. Dept. of Public Safety v. Chavez,* 981 S.W.2d 449, 452 (Tex.App.—Fort Worth 1998, no pet.). Moreover, a legislative enactment is not automatically void for vagueness simply because it is difficult to determine whether certain marginal acts fall within its language. *Rooms With A View, Inc. v. Private Nat'l Mortgage Ass'n, Inc.,* 7 S.W.3d 840, 845 (Tex.App.—Austin 1999, pet. denied). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294.

 Appellees in their motions to dismiss asserted that certain statutory

---

8. The following set out in pertinent part is typical of all twelve dismissal orders:

The Court heard evidence and argument of counsel. The Court finds the Motion to Dismiss the indictment should be granted. The law in question is Section 47.01(4)(b) of the Texas Penal Code. That provision attempts to describe contrivances which are not "gambling devices." In this attempt it woefully fails. Based on the evidence presented in this case there is no issue but that a player is entitled to redeem, after a single play, no more than what the law allows. At issue is whether nonredeemable credits awarded which allow continuation of play violate this exception, therefore constituting the contrivance a "gambling device" in violation of the laws. In this regard the Court finds that 47.01(4)(b) provides an ordinary law-abiding citizen insufficient and ambiguous information by which to attempt to comply with the law. The uncontradicted evidence in this case shows that defendant sought advice from prosecutors to ensure that they complied with the law and acted accordingly. Further, from the evidence presented, it is clear that law enforcement is in a quandary in attempting to enforce this law due to the ambiguous nature of the law. Law enforcement and prosecutors are entitled to clear guidelines when enforcing the law to avoid arbitrary enforcement and prosecution. This law does not provide that clear guideline.

Therefore, the Court finds that Section 47.01(4)(b) is unconstitutional in that it is impermissibly vague offending the requirement of due process of law. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

terms[9] in section 47.01(4)(B) were unclear and ambiguous, rendering the statute void for vagueness. Mere allegations that a statute is "unconstitutional" do not entitle a party to an adjudication of the validity of a statute. *Allen v. Employers Cas. Co.,* 888 S.W.2d 219, 222 (Tex.App.—Amarillo 1994, no writ).

■ ■ There is no constitutional requirement that a statute define all words or terms used. *Rooms with a View,* 7 S.W.3d at 845. A statute is not unconstitutionally vague for that reason. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex. Crim.App.1988). Undefined words in a statute are ordinarily given their plain meaning unless the statute shows that they were used in some other sense. *Daniels v. State,* 754 S.W.2d 214, 219 (Tex. Crim.App.1988); *Anderson,* 902 S.W.2d at 699. Undefined statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Ely,* 582 S.W.2d at 419. Undefined words are to be read in context and construed according to the rules of grammar and common usage. *See* Tex. Gov't Code Ann. § 311.011(a) (West 1999); Tex.Penal Code Ann. § 1.05(b) (West 1994); *Anderson,* 902 S.W.2d at 699. And in construing the plain meaning of the language of a statute, courts may resort to the use of dictionary definitions. *See Bingham v. State,* 913 S.W.2d 208, 209–10 (Tex.Crim.App.1995). An ordinary law-abiding citizen may do so as well. *See Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App.1978). Based on the canons of statutory construction, the language of a statute is accorded its plain meaning unless the words are unclear, ambiguous, or the plain meaning yields absurd results. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

■ ■ At the hearing, Halamicek testified that the statutory phrases set forth in appellees' motions to dismiss were a source of "confusion" when he met to consult with "legal officials," without revealing the nature of the confusion or who was confused. The common definition of three words ("amusement," "bona fide," and "play") as found in Webster's Dictionary were introduced. Appellees never established that the words or terms of the statute were "fraught with ambiguity" as alleged. Further, appellees never established the "lack of notice" required by the first inquiry into whether a statute is void for vagueness. *Fry,* 867 S.W.2d at 401. Appellees' modification of the eight liners and their considered decision not to eliminate the replay feature of the machines speak loudly to the contrary of the notion that appellees were denied a reasonable opportunity to know what was prohibited by law. Paragraph B is silent about allowing replay credit on devices that are not to be considered gambling devices. Appellees have not pointed out, nor did the trial court find, that absence of such reference in the definitional statute renders the statute unconstitutionally vague.

We conclude that section 47.01(4)(B) here under constitutional attack must be given its plain meaning. When measured by common understanding and practice, Paragraph B fairly informed appellees of the nature of the exclusion. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294.

■ ■ Having found that Paragraph B fairly apprises ordinary law-abiding citizens such as appellees of the exclusions from the statutory definition of a gambling device, we turn to the second inquiry. A penal statute encourages arbitrary enforcement when it fails to provide clear guidelines thereby giving law enforcement officials unbounded discretion to apply the law selectively. *May v. State,* 765 S.W.2d 438, 440 (Tex.Crim.App.1989); *Goocher v. State,* 633 S.W.2d 860, 865 (Tex.Crim.App.

9. These terms included "gambling device," "bonafide amusement purposes," "noncash merchandise prizes, toys or novelties or a representation of value redeemable for those items," and "that have a wholesale value from a single play ... or not more than ten times the amount charged to play ... or $5, whichever is less."

1982). The trial court found "that law enforcement is in a quandary in attempting to enforce this law [Paragraph B] due to [its] ambiguous nature." This finding is based in large measure upon the difference in opinion, at least at one time, between local and state law enforcement as to the legality of the modified eight liners belonging to Valley Vending. The fact that certain law enforcement personnel may have misinterpreted a statute does not necessarily render it impermissibly vague nor does it establish that the statute encourages arbitrary and erratic arrests. *State v. Gambling Device,* 859 S.W.2d 519, 526 (Tex.App.—Houston [1st Dist.] 1993, no pet.). A mere difference of opinion where reasonable minds could differ is not a sufficient basis for striking down legislation as arbitrary and unreasonable. *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983) (citing *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex. 1968)).

Appellees offered into evidence the earlier testimony of a deputy attorney general before a Senate Economic Development Committee hearing held on March 9, 1999, on S.B. 970. This official stated there was "an epidemic of eight liners all over the State of Texas and there is genuinely nothing we can do about it." He expressed the opinion that the law needed to be clarified as the present "law" was vague and confusing and was causing difficulty in prosecution. Reference was only to the "law." There was no mention of Article 47.01(4)(B) or the definition of a gambling device. Appellees also offered a newspaper quote from a Lubbock prosecutor about the outcome of a local case. Apparently in an attempt to show selective prosecution, Halamicek identified photographs that he said were taken after the return of the indictments of unmodified eight liners apparently in use in business establishments in Big Spring, Tye, Abilene, and Amarillo. The photographs themselves did not establish selective prosecution. Counsel for appellees commented without proof that there had been a number of criminal trials in Texas involving eight lin-

ers and that the defendants had been acquitted by the jury in each case. The trial court made no finding based on selective prosecution.

Statutes are presumed to be valid and must be construed if possible to uphold their validity. *Ely,* 582 S.W.2d at 419. Appellees did not sustain their burden to show that section 47.01(4)(B) is void for vagueness under either prong of the inquiry into the statute's unconstitutionality as applied to appellees on the basis of a lack of due process. The trial court erred in dismissing the indictments.

**Other Reasons Undermining Ruling**

There are additional reasons why the orders dismissing the twelve indictments cannot stand. If the orders declaring section 47.01(4)(B) unconstitutional were correctly and properly entered, there would still be a definition of a "gambling device" to be utilized, if necessary, upon the trial of the indictments, all valid on their face. The only question may be—which definition? The trial court's orders in effect severed the exclusionary part (paragraph B) from the statutory definition leaving the stem definition and paragraph A. *See* Tex.Penal Code Ann. § 47.01(4)(A). When a court determines that a portion of a statute is unconstitutional, the court must determine whether the remainder of the statute can stand on its own. *Delorme v. State,* 488 S.W.2d 808, 811–12 (Tex.Crim.App.1973); *Hixon v. State,* 523 S.W.2d 711, 715 (Tex.Crim.App. 1975) (Odom, J., concurring); *Tussey v. State* 494 S.W.2d 866, 869–70 (Tex.Crim. App.1973). In making this determination, the court must decide whether the remainder, wholly independent of the rejected portion of the statute, is capable of being executed in accordance with the apparent legislative intent. *Delorme,* 488 S.W.2d at 811–12.

> [W]hen invalid portions of a law are severed, in order to save the law, it must be plain that the Legislature would have

passed the act with the invalid provisions eliminated, and in seeking the legislative intent the presumption is against any mutilation of the statute; courts will resort to elimination only where an unconstitutional provision interjected into a statute otherwise valid is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.

*Womack v. Carson,* 123 Tex. 260, 70 S.W.2d 416, 417 (1934).

The test has been more recently stated in terms of whether the statutory provisions are "essentially and inseparably connected in substance." *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 844 (Tex.1990). If they are, then the entire statute must be stricken. *Ex parte Levinson,* 160 Tex. Crim. 606, 274 S.W.2d 76, 77–78 (1955).

■ The test is further refined in cases where a proviso, exception, or restriction is stricken. In that particular situation, a court must determine whether the statute takes on a broader scope or defines a new offense. *Hixon,* 523 S.W.2d at 717 (Odom, J., concurring); *Levinson,* 274 S.W.2d at 77–78; *Womack,* 70 S.W.2d at 417. If so, the court must invalidate the entire statute. To do otherwise would permit the court to invade the law-making province of the legislature. *Levinson,* 274 S.W.2d at 78; *City Nat'l Bank of Austin v. Falkner,* 428 S.W.2d 429, 432 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.).

The current version of section 47.01(4) defining "gambling device" was enacted in 1995. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 318, § 19, 1995 Tex. Gen. Laws 2734, 2742. This 1995 amendment carefully limited the previous broad and all encompassing definition in section 47.01(4) as originally enacted as part of the 1994 Penal Code. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen. Laws 3586, 3690.[10]

The stem definition in the 1995 amendment is similar to the 1994 Penal Code version but is limited by the phrase "not excluded under Paragraph B." Tex. Penal Code Ann. § 47.01(4) (West 2000). Paragraphs A and B were added to the stem definition in 1995 to reflect what was included and what was not included in the

---

**10.** To avoid any confusion in the statutes defining a "gambling device" which preceded the current statute, attention is called to Attorney General's Opinion DM–280 (January 3, 1994) directed to Senator Ken Armbrister. This opinion explained the order in which the statutes preceded the 1995 amendment. Senate Bill 522 and Senate Bill 1067 were both enacted during the 73d legislative session in 1993. S.B. 1067 enacted the 1994 Penal Code on May 29, 1993 to become effective September 1, 1994. It contained the broad definition mentioned above. S.B. 522 contained the definitions of a "gambling device" almost identical with the 1995 amendment involved in the instant proceeding. *See* Act of May 31, 1993, 73d Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3028.

Attorney General's Opinion DM–280 held that under the Code Construction Act, two amendments to the same statute enacted during the same legislative session without reference to each other should be harmonized if possible. If, however, they are irreconcilable, the latest amendment prevails. DM–280 at 2. The statutes as to the definitions of "gambling

device" are irreconcilable and, under the suggested rule, it would appear that S.B. 522 would prevail as it was enacted on May 31, 1993 to become effective August 30, 1994. However, Attorney General's Opinion DM–280 points out that the Code Construction Act does not apply where the legislature has clearly expressed its intent as to the proper course to follow if two laws passed at the same session conflict. *Id.* at 2 (citing Attorney General's Opinion DM–234 (1993)). The legislature did just that in section 13.02 of S.B. 1067. *See* Act of May 29, 73d Leg., R.S., ch. 900, § 13.02(a), (b). Thus, the Attorney General concluded that the definition of a "gambling device" set forth in S.B. 522 only applied to offenses committed on or after August 30, 1993 and before September 1, 1994. S.B. 1067 (the 1994 Texas Penal Code) and its definition of a "gambling device" became effective on September 1, 1994 and applied to all offense committed after that date. We agree with Attorney General's Opinion DM–280.

The 1994 Penal Code definition was replaced by the 1995 amendment almost identical to the definition in S.B. 522.

statutory definition. If paragraph B is severed, it is clear that the remaining statutory language is broader in scope than the legislature intended. Under these circumstances, all of section 47.01(4) would have to be stricken.

Generally, an invalid or unconstitutional act cannot repeal a valid statute, and where the amendment is declared invalid, the original act remains in full force and effect even if the amendment has no savings clause. *Ex parte Crisp*, 661 S.W.2d 944, 948 (Tex.Crim.App.1983) (citing *White v. State*, 440 S.W.2d 660, 667 (Tex.Crim. App.1969)). Subsection (4) of section 47.01 is only one of the definitions found in the section for Chapter 47 of the Texas Penal Code. If subsection (4) falls in its entirety because it is broader in scope than the legislature intended without the severed Paragraph B, is Chapter 47 without a statutory definition of "gambling device," or does the former statutory definition of the term found in 1994 Penal Code come into play? [11]

 Even if all former statutory definitions of a "gambling device" are inapplicable, there is no constitutional requirement that a statute define all words or terms. *Rooms with a View*, 7 S.W.3d at 845. Undefined terms may be given their plain meaning by common understanding and practices. *Ely*, 582 S.W.2d at 419. Thus, declaring Paragraph B of section 47.01(4) unconstitutional furnishes no basis for dismissing the instant indictments and terminating the prosecutions.

### Additional Reason

 As can be seen, the fact that a count in an indictment alleges a "gambling device" as an element of the offense does not justify the dismissal of the indictment because of the unconstitutionality of a part or all of a statutory definition. Moreover,

some of the dismissed indictments, valid on their faces, contained counts alleging offenses that do not include an allegation of a "gambling device" as an element of the offense. Yet these counts were also dismissed when the trial court terminated all prosecution by dismissing in their entirety all the indictments when finding section 47.01(4)(B) unconstitutional. Thus, another reason underlying the invalidity of the dismissal orders appears.

The State's first issue is sustained. We need not reach the second issue.

The orders dismissing the indictments in all causes are reversed, and the causes are remanded to the trial court.

---

11. The 1994 Code's definition is similar to that of its forerunner in former 47.01(B) of the 1974 Texas Penal Code. The definition of a "gambling device" in former section 47.01(B) was held constitutional in *State v. Mendel*, 871 S.W.2d 906 (Tex.App.—Houston [14th Dist.] 1994, no pet.), and *State v. Fry*, 867 S.W.2d 398, 403 (Tex.App.—Houston [14th Dist.] 1993, no pet.).