Richard LEGERE, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–00–00565–CR.

Court of Appeals of Texas, San Antonio.

April 17, 2002.

Emil W. Holiner, Law Office of Emil Holiner, San Antonio, for Appellant.

Kevin P. Yeary, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice and KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

Appellant Richard Legere was convicted of engaging in organized criminal activity by combining and conspiring with others to promote gambling, to keep a gambling place, and to possess a gambling device. The trial court sentenced Legere to two years imprisonment, suspended his sentence, and placed him on community supervision for two years. Legere brings four issues on appeal. We overrule all four issues and affirm the judgment of the trial court.

## BACKGROUND

Legere owns Poor Richard's Lounge. On February 19, 1998, Michael Hodges, a Texas Alcoholic Beverage Commission agent, entered Poor Richard's Lounge and observed several "eight-liners." Eight-liners are modified video machines, which the State has labeled "gambling devices." Hodges issued an administrative warning for possession of gambling devices. On February 27, 1998, Jairo Saenz, an investigator with the Texas Department of Public Safety, went to Poor Richard's Lounge and observed five eight-liners. Saenz inserted money into one of the machines and won forty credits. He asked the bartender, Rosemarie McKiernan Baldi, to cash him out. Baldi offered Saenz a choice of Diamond Shamrock money orders, HEB gift certificates, and Wal Mart gift certificates. Saenz chose the Diamond Shamrock money order, and Baldi gave him one worth $10.00. On March 3, 1998, Saenz returned to Poor Richard's Lounge and played the eight-liners again. He won 320 credits and again chose the Diamond Shamrock money orders. The bartender, Pamelia Ann Gamble, gave him two $10.00 Diamond Shamrock money orders. Legere, the owner of Poor Richard's Lounge, was arrested for organized criminal activity through gambling.

## JURY INSTRUCTION

In his first issue, Legere argues that the trial court erred in failing to include a mistake of fact instruction in the

jury charge, because his testimony was sufficient to raise a mistake of fact defense. At trial, Legere testified that (1) he received advertisements for the sale of eight-liners all the time, and one such advertisement stated that it was designed for legal use in Texas, (2) he knew of approximately twenty businesses within four or five miles of his business which operate eight-liners, (3) he paid taxes on the eight-liners, (4) he knew that the American Legion and VFW have similar machines, and (5) he had read a newspaper article that stated that eight-liners were legal. Legere also points to the testimony of police officers who stated that eight-liners were prevalent in Texas. Legere argues that even these officers were confused about when and under what circumstances eight-liners were illegal.

Section 8.02 of the Texas Penal Code permits a mistake of fact defense:

(a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

(b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.

TEX. PEN.CODE ANN. § 8.02 (Vernon 1994).

Legere's testimony, however, does not raise a mistake of fact defense. The testimony only shows that Legere did not believe that his conduct was illegal. None of the offenses with which Legere was charged required him to believe that his conduct was illegal. *See* TEX. PEN.CODE ANN. §§ 47.03(a)(1), (3), 47.04(a), 47.06(a) (Vernon 1994), § 71.02(a)(2) (Vernon Supp. 2002). Legere insists only that he did not know that the acts he committed were an offense; he does not dispute that he committed those acts. *See Ransom v. State,* 73 Tex.Crim. 442, 445, 165 S.W. 932, 933 (1914) (holding that deputy sheriff's belief that he had right to carry pistol in county other than his appointment was mistake of law, not of fact, and did not relieve him of criminal liability); *Hickman v. State,* 64 Tex.Crim. 161, 163, 141 S.W. 973, 974 (1911) (holding that defendant who testifies that he did not know that act he committed was offense does not raise mistake of fact). Legere was, therefore, not entitled to an instruction on mistake of fact. *See Vitiello v. State,* 848 S.W.2d 885, 887 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) (holding defendant was not entitled to mistake of fact instruction because, assuming defendant's version was true, his only mistake was believing his actions were not unlawful).[1]

Because Legere was not entitled to an instruction on mistake of fact, we overrule his first issue.

### FAILURE TO GRANT MISTRIAL

In his second issue, Legere argues that the trial court erred by not granting a

---

1. The evidence did, however, raise a mistake of law issue. Mistake of law is usually not a defense: "It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect." TEX. PEN.CODE ANN. § 8.03(a) (Vernon 1994). Mistake of law is an affirmative defense only if the defendant (1) reasonably believed that his conduct was not criminal and (2) acted in reasonable reliance upon an opinion by a court, administrative agency, or public official charged by law with responsibility for interpreting the law in question. *Id.* § 8.03(b). Here, the evidence was not sufficient to invoke this affirmative defense, because there was no evidence that Legere relied on an opinion by a court, administrative agency, or public official. Nevertheless, the trial court granted Legere's request for a mistake of law instruction and instructed the jury on mistake of law.

mistrial. Specifically, Legere complains that the State improperly questioned Sergeant Patrick Poerner about Legere's silence after Legere had been read the *Miranda* warnings:

Q: During the course of your—the execution of the search and seizure, who, if anybody, read Mr. Legere his Miranda warnings?

A: I did.

Q: And once Mr. Legere was read his Miranda warnings, did he give you a statement?

A: No, sir, he did not.

Q: Did he give you a written statement?

A: No, sir, he did not give us a written statement.

Q: Did he make any voluntary or—

At this point, Legere objected to this line of questioning. The trial court overruled the objection, but later instructed the jury to disregard the testimony:

Previously, this witness testified to giving this defendant his Miranda warnings. Then there were some questions and answers by the State about what he said or he did not say. You are not to consider any answers regarding that line of questioning and the answers from this witness. You will recall the testimony without me having to elaborate on it. Does everybody understand that?

Legere then moved for a mistrial. The trial court denied his motion.

To preserve his complaint for appellate review, the record must show that Legere made a *timely* objection. Tex.R.App. P. 33.1(a). Legere waited until Poerner had answered the State's question before he objected. Because Legere's objection was untimely, he has waived his complaint on appeal. *See Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App.1997) ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived.").

■ Even if Legere had not waived his complaint, any error by the trial court was harmless. The trial court's instruction to disregard Poerner's testimony about Legere's silence cured any error. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995) (holding that witness's testimony commented on appellant's post-arrest silence, but that trial judge's instruction to disregard witness's testimony cured error). As such, the trial court did not err in denying Legere's motion for mistrial. We overrule Legere's second issue.

## CONSTITUTIONALITY OF TEXAS PENAL CODE § 47.01(4)

■ In his third issue, Legere argues that section 47.01(4) is unconstitutional, because it is too vague.[2] Section 47.01(4) defines the term "gambling device":

"Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player the opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

(A) includes, but is not limited to, gambling device versions of bingo,

---

2. Legere makes the conclusory statement that section 47.01(4) is "unconstitutionally overbroad and vague." While Legere briefs the vagueness doctrine, he makes no attempt to brief why this section is overly broad or how it being overly broad is different from it being vague. Because the issue was not properly briefed, we decline to determine whether section 47.01(4) is overly broad in violation of the Constitution. Tex.R.App. P. 38.1(h).

keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

TEX. PEN.CODE ANN. § 47.01(4) (Vernon Supp.2002). Legere argues that "[s]everal terms referred to in the statute are undefined and ambiguous, leaving ordinary persons exercising ordinary common sense to guess at their meanings." In particular, Legere complains that many of the terms are subject to myriad interpretations. These terms include "bona fide amusement purposes," "noncash merchandise prizes, toys, or novelties or a representation of value redeemable for those items," "wholesale value available from a single play of the game or device," "wholesale value," "single play," and "amount charged to play the game or device once."

Legere does not specify whether he is bringing a facial challenge to section 47.01(4) or whether he believes section 47.01(4) is unconstitutional as applied to him.[3] A facial challenge to a statute on the basis of vagueness will succeed only if the statute is impermissibly vague in all its applications. *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987); *State v. Wofford,* 34 S.W.3d 671, 678 (Tex.App.-Austin 2000, no pet.). A facial challenge is the most difficult because the challenger must establish that no set of circumstances exists under which the statute would be valid. *Briggs v. State,* 789 S.W.2d 918, 923 (Tex.Crim.App.1990); *Wofford,* 34 S.W.3d at 678. As Legere discusses his individual circumstances in his brief, we will assume that a facial challenge is not involved here.

When challenging the constitutionality of a statute as applied, a defendant must show that in its operation, the statute is unconstitutional as applied to him in his situation. *Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App.1989); *Wofford,* 34 S.W.3d at 678. When no rights under the First Amendment are involved, the reviewing court should not consider hypothetical situations, but should scrutinize the statute only to determine whether it is impermissibly vague as applied to the challenging party's specific conduct or situation. *Bynum,* 767 S.W.2d at 774; *Wofford,* 34 S.W.3d at 678.

Recently, three courts of appeals have reviewed whether section 47.01(4) is constitutional in the context of the possession, operation, use, etc., of eight-liners. *See State v. Hancock,* 35 S.W.3d 199 (Tex.App.-Waco 2000, no pet.); *State v. Wofford,* 34 S.W.3d 671 (Tex.App.-Austin 2000, no pet.); *Owens v. State,* 19

---

3. Legere also does not explain how his rights under the Texas Constitution or under article 38.08 of the Texas Code of Criminal Procedure differ from his rights under the United States Constitution. We, therefore, will only decide whether section 47.01(4) is void for vagueness under the United States Constitution. *See* TEX.R.APP. P. 38.1(h).

S.W.3d 480 (Tex.App.-Amarillo 2000, no pet.). All three have held that section 47.01(4) is constitutional. In particular, the Third Court of Appeals in *Wofford* explained its reasoning in detail. *See Wofford*, 34 S.W.3d at 678–79; *see also Hancock*, 35 S.W.3d at 200 (following *Wofford*). It applied a two-pronged test to determine whether a criminal statute is impermissibly vague. The first prong is "whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law." *Id.* at 678. The second prong is "whether the statute in question provides sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement." *Id.* at 679. Either the lack of notice or the lack of guidelines for law enforcement provides an independent ground for finding a statute void for vagueness. *Id.* In applying this two-prong test, the Third Court of Appeals determined that section 47.01(4) is constitutional. We will follow *Wofford* and adopt its reasoning.

■ The facts in *Wofford* are similar to the facts here. Both involve the constitutionality of section 47.01(A) in the context of eight-liners. Legere argues that *Wofford* is distinguishable, because the police officers' testimony here showed that they were confused about when an eight-liner is a gambling device. The law enforcement officers in *Wofford*, however, also disagreed about when an eight-liner is illegal. *Wofford*, 34 S.W.3d at 681. The *Wofford* court correctly noted that the "fact that certain law enforcement personnel may have misinterpreted a statute does not necessarily render it impermissibly vague nor does it establish that the statute encourages arbitrary and erratic arrests." *Id.* "A mere difference of opinion where reasonable minds could differ is not a sufficient basis for striking down legislation as arbitrary and unreasonable." We find no basis for distinguishing this case from *Wofford*. Therefore, for the reasons stated by the Third Court of Appeals, we hold that the trial court did not err when it found section 47.01(4) to be constitutional. Legere's third issue is overruled.

## MOTION TO SUPPRESS

■ In his final issue, Legere argues that the trial court should have granted his motion to suppress, because the search warrant issued to search the premises of Poor Richard's Lounge was invalid. Specifically, Legere maintains that the affidavit in support of the warrant was insufficient to show probable cause, because it did not allege that the players of the eight-liners received anything of value. A search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. *Bradshaw v. State*, 40 S.W.3d 655, 660 (Tex.App.-San Antonio 2001, pet. ref'd). Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Id.* The four corners of the affidavit are examined in determining whether probable cause exists. *Id.* "Reasonable inferences may be drawn from the affidavit, however, and the affidavit must be interpreted in a common sense and realistic manner." *Id.* "The magistrate is not required to find proof beyond a reasonable doubt or by a preponderance of the evidence, but only a probability that contraband or evidence of the crime will be found in a particular place." *Id.*

■ We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Id.* We give deference to the trial court's determination of

historical facts that depend on credibility choices, but review its application of the law of probable cause de novo. *Id.* Because only the four corners of the affidavit are examined in determining whether probable cause to issue a warrant exists, the trial court is not required to make any credibility choices in examining the affidavit. *Id.* We, therefore, review the trial court's ruling here de novo. *Id.* In conducting this de novo review, we do not determine the substantive issue that was before the magistrate de novo. *Id.* "Instead, giving great deference to the magistrate's decision to issue the warrant, we determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed." *Id.*

For the magistrate to have properly issued the search warrant, the totality of facts alleged in the affidavit must have given the magistrate a substantial basis for concluding that there was probable cause to believe one or more gambling devices were located in Poor Richard's Lounge. Section 47.01(4) defines a gambling device as any device that "for a consideration affords the player an opportunity to obtain *anything of value* ..." TEX. PEN.CODE ANN. § 47.01(4) (Vernon Supp.2002) (emphasis

added).[4] Section 47.01(9) defines a "thing of value" as "any *benefit,* but does not include an unrecorded and immediate right of replay not exchangeable for value." *Id.* § 47.01(9) (emphasis added). Section 1.07(a)(7) defines the term "benefit" to include "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." *Id.* § 1.07(a)(7) (Vernon 1994).

The affiant, Jairo A. Saenz, affirmed that on two separate occasions, in exchange for credits won on two different eight-liners, he was given Travelers Express Money Orders, stamped "Gift Certificate." These money orders were payable to the order of Diamond Shamrock. Legere contends that this affidavit is insufficient, because it affirms that the "gift certificates" awarded were payable to Diamond Shamrock, not to the player. And, by not making such an allegation, the affidavit does not sufficiently allege that gambling devices were present at Poor Richard's Lounge. We disagree. "Gift certificates" or "money orders" clearly give a player an economic gain or advantage. *See Allstar Amusement v. State,* 50 S.W.3d 705, 708 (Tex.App.-Waco 2001, no pet.) (holding that tickets dispensed by

---

4. Excluded from the definition are those devices that reward the player "exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less." TEX. PEN.CODE ANN. § 47.01(4)(B) (Vernon Supp.2002). As subsection 47.01(4)(B) exempts certain types of devices, not all eight-liners are necessarily gambling devices. *See id.* At trial, the State bore the burden of negating the applicability of section 47.01(4)(B) in order to prove the eight-liners were gambling devices within the meaning of the entire statute. *See State v. One Super Cherry Master Video 8–Liner Ma-*

*chine,* 55 S.W.3d 51, 53 (Tex.App.-Austin 2001, rule 53.7(f) motion filed). Legere, however, limits his argument to whether the eight-liners gave the player an opportunity to receive anything of value. He does not argue that the Diamond Shamrock money orders are a representation of value redeemable for noncash merchandise prizes, toys, or novelties that have a value of not more than 10 times the amount charged to play the game or device once or $5, whichever is less. We, therefore, limit our analysis to section 47.01(4)(A). *See Allstar Amusement v. State,* 50 S.W.3d 705, 707 (Tex.App.-Waco 2001, no pet.) (limiting analysis to section 47.01(4)(A), because appellant did not argue that exception provided by section 47.01(4)(B) applied).

eight-liners provided "benefit" to players as defined in section 47.01(4)(A)); *Smith v. State,* 959 S.W.2d 1, 20–21 (Tex.App.-Waco 1997, pet. ref'd) (holding that company provided "benefits" to defendant, as defined in section 1.07(a)(7), by giving him meals, lodging, air and ground transportation, and theater tickets, even though company did not give him money to purchase these items). Although the affidavit did not further explain that players could take the money orders to Diamond Shamrock and exchange them for cash or merchandise, the magistrate, in looking at the totality of the circumstances alleged in the affidavit, had a substantial basis for concluding that probable cause existed to believe that the player received a "benefit." We overrule Legere's final issue.

### CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.