Arthur Garcia SANCHEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00140–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 12, 2005.

Mark Stevens, Stephanie L. Stevens, San Antonio, for appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PHYLIS SPEEDLIN, Justice, JOHN F. ONION, JR., Justice.

## OPINION

Opinion on Second Remand by JOHN F. ONION, JR., Justice.[1]

"Only when the law is the soul of fairness can it truly be the soul of reason." ROGER J. TRAYNOR, THE RIDDLE OF HARMLESS ERROR (1970).

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 2005).

## INTRODUCTION

The case at hand has become the *Sanchez Saga*. This opinion is *Sanchez V*. The cause has been remanded a second time by the Texas Court of Criminal Appeals— this time for reconsideration of the issue of harm arising from the erroneous overruling of appellant's pretrial motion to quash the indictment based on the lack of notice of the nature and cause of the accusation against him as constitutionally and statutorily required. The Court of Criminal Appeals has apparently limited our reconsideration to a special type of statutory harmless error analysis for charging instruments under article 21.19 of the Code of Criminal Procedure [2] as interpreted in *Adams v. State*, 707 S.W.2d 900 (Tex. Crim.App.1986). *See Sanchez v. State*, 120 S.W.3d 359, 368 (Tex.Crim.App.2003) *(Sanchez IV)*.

The defect complained of in the instant one-count and one-paragraph indictment consisted of the failure to specify and give notice of the complainant's alleged "rights, privileges, powers, and immunities" and the terms and conditions thereof that appellant had made subject to the complainant's submission to ten different offenses of sexual harassment. *Adams* held that under article 21.19 a conviction could be affirmed on appeal despite a showing that the trial court erred in overruling a challenge to the charging instrument based on a defect of form. Affirmance was mandated if the defect did not prejudice the substantial rights of the accused. 707 S.W.2d at 903. Under this approach, the inquiry ends if sufficient notice has been given in the indictment or information. *Id.* If not, it must be shown by the accused from the "context of the case" that the defect had an impact upon the accused's ability to prepare and present a defense, and how great an impact. *Id.* The burden is placed on the accused, even though he has preserved error for review by his motion to quash, the error remains unremedied, and the accused offers no defense, relying on the State's failure to prove its case beyond a reasonable doubt. *See id.* at 904.

We note that the *Adams* analysis does not focus on the trial court's error but on the consequences of the trial. *Adams* places a different burden on the accused than that imposed by the Court of Criminal Appeals under other statutory harm analyses and the Texas Rules of Appellate Procedure. It arguably transforms a harm analysis to an approach that relieves the trial court of the obligation to quash a charging instrument, regardless of the defect and the merits of the challenge. *See* 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 21.147 n. 4 (2d ed. Supp. 2004) (discussing *Kellar v. State*, 108 S.W.3d 311 (Tex.Crim.App.2003), a progeny of *Adams*). It appears that in the process, constitutional and statutory frameworks to guarantee an accused notice in the charging instrument itself of precisely what conduct he is accused of have been forsaken.

While the Court of Criminal Appeals has cautioned that the State may not conduct "trial by ambush," *State v. Moff*, 154 S.W.3d 599, 603 (Tex.Crim.App.2004), cases such as *Kellar, supra*, have not been modified. The unraveling of fairness inherent in the traditional Texas procedure of observing constitutional and statutory pleading requirements began in *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Crim.App.1974). That decision termed what always was considered the substance of a charging instrument as being mere form. This drastic change was done in a misdemeanor case totally without

---

**2.** TEX.CODE CRIM. PROC. ANN. art. 21.19 (Vernon 1989).

constitutional considerations. *See Janecka v. State*, 739 S.W.2d 813, 840–41 (Tex. Crim.App.1987) (Duncan, J., dissenting)[3] (referring to defendant's constitutional right to have the state prove guilt beyond a reasonable doubt without actively asserting a defense).

Paying lip service to the constitutional notice requirements of Article I, Section 10 of the Texas Constitution, the *Adams* court seized upon the *American Plant Food Corp.* decision and held that the lack of adequate notice in the charging information was a defect of form subject to harmless error analysis under article 21.19 of the Code of Criminal Procedure. *Adams*, 707 S.W.2d at 903. Thus, *Adams* has cast an additional burden upon a defendant to show from the "context of the case" how the defendant was harmed in preparing and presenting his defense despite the unremedied error in the charging instrument, leaving the State as the beneficiary

of the trial court's error in overruling the challenge to the charging instrument. *Adams* and its progeny have formed a harmless error roadblock to the exercise of an accused's constitutional and statutory rights.

We have concluded, however, that appellant has met the *Adams* test. This conclusion is strengthened when it is acknowledged that no party should have the burden to show harm from an error. *See Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim.App.2000). Moreover, we have sustained two unassigned errors also entitling appellant to a new trial.

## THE CASE AT HAND

The instant appeal was taken from a 1996 conviction for official oppression involving sexual harassment. *See* TEX. PEN. CODE ANN. § 39.03(a)(3) (Vernon 2003).[4]

---

3. On rehearing, *Janecka v. State*, 739 S.W.2d 813, 841 (Tex.Crim.App.1987), was remanded to the trial court for a hearing on the issue of harm.

4. The current code is cited for convenience. The indictment alleged the offense occurred between August 1, 1994 and February 15, 1995. Section 39.03 became effective September 1, 1994. Therefore, the former statute (§ 39.02) was also implicated. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 953, *as amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 1217, § 1, 1989 Tex. Gen. Laws 4934, 4935 (adding subsection 39.02(a)(3), (c)), *as amended by* Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 19.01(34), 1991 Tex. Gen. Laws 244, 369, *as amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3674 (current version of § 39.03(a)(3)). Sections 39.02 and 39.03 were identical except for the later renumbering. The current code remains unchanged.

Section 39.03 as amended in 1993 and applicable to the case at bar provides:

(a) *A public servant acting under color of his office or employment commits an offense if he:*

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3) *intentionally subjects another to sexual harassment.*

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) *In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.*

(d) An offense under this section is a Class A misdemeanor.

TEX. PEN.CODE ANN. art. 39.03 (Vernon 2003) (emphasis added). Particular attention is directed to subsection (c) defining "sexual

The district court jury found appellant Arthur Garcia Sanchez guilty of the Class A misdemeanor[5] and assessed his punishment at one year in the county jail and a fine of $3,000. The jury, however, recommended community supervision (probation). The trial court suspended the imposition of the sentence and placed appellant on community supervision for two years subject to certain conditions.

On original submission, this Court on May 20, 1998, sustained two of appellant's contentions, finding that the sexual harassment provision in section 39.03(c) was (1) unconstitutionally vague on its face and as applied in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, and (2) unconstitutionally overbroad in violation of the First Amendment to the United States Constitution. *See Sanchez v. State*, 974 S.W.2d 307, 319, 321 (Tex.App.-San Antonio 1998) (*Sanchez I*). The Court of Criminal Appeals on petition for discretionary review found the sexual harassment statutory provision constitutional, reversed our judgment and remanded the cause for proceedings consistent with its opinion. *See Sanchez v. State*, 995 S.W.2d 677, 680, 689–90 (Tex.Crim.App.), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999) (*Sanchez II*).

In construing section 39.03(a)(3), (c) and finding it constitutional, the Court of Criminal Appeals determined that it could not give plain meaning to subsection (c) because its definition of "sexual harassment" was ambiguous. *Sanchez II*, 995 S.W.2d at 683–84. The court then resorted to sources outside the language of the statutory definition. *Id.* at 684–85.

To find the statute constitutional, the court, in its opinion, developed for the first time some of the essential elements of the offense, which, needless to say, were not applied in appellant's trial. *Id.* at 687. Agreeing that the grammatical construction was awkward, the court concluded that the term "unwelcome" as used in the statute modified not only "sexual advances" but also modified all the other forms of sexual harassment under subsection (c) of section 39.03. *Id.* at 684–85.

The court also found that the perpetrator's culpable mental state of intent relates to the entire statutory definition of sexual harassment, asserting:

> The statute requires that the perpetrator not only intentionally subject a victim to the specified unwelcome sexual conduct (sexual advances, request for sexual favors, etc.), the perpetrator must also intend that submission to the conduct is made a term or condition of a person's exercise of any right, privilege, power, or immunity. In other words, the culpable mental state applies to both (1) the sexual conduct, and (2) the *quid pro quo*.

*Id.* at 686 (emphasis in original). In addition to expanding the culpable mental state of "intent" in its interpretation of the statute, the court required the element that the perpetrator must know (or be aware) that his conduct of a sexual nature is not welcomed by the recipient. *Id.* at 687–88.

Because it is important to our later discussion, we observe that the statutory phrase "submission to which [conduct of a

---

harassment" as it will figure prominently in our discussion.

**5.** The instant offense was charged by an indictment presented to a district court. Official oppression is within the ambit of official misconduct. *See Emerson v. State*, 727 S.W.2d 267, 268–69 (Tex.Crim.App.1987). The offense charged, a misdemeanor, is within the jurisdiction of the district court. *See* Tex. Const. art. V, § 8; Tex.Code Crim. Proc. Ann. art. 4.05 (Vernon 2005).

sexual nature] is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly" gave the court some difficulty in interpretation. *See id.* at 686–87. The indictment had pluralized the phrase and used "her rights, privileges, powers, and immunities."

■■■ The court stated that for the purpose of its opinion, it would assume, without deciding, that the phrase "rights, privileges, powers, and immunities" is so broad that it covers "anything of value to a person." *Id.* at 686. This latter phrase is broader than "rights, privileges, powers, and immunities." Normally, courts cannot broaden the terms of a statute without running afoul of the prohibition against judicial legislation. Courts cannot assume the legislative prerogative and rewrite a statute. *Cf. Morehead v. State,* 807 S.W.2d 577, 581 (Tex.Crim.App.1991).

Later the court stated:

*Whatever the scope of "rights, privileges, powers, and immunities,"* the sexual harassment provision of the official oppression statute proscribes conduct that, *at least,* contains the following elements:

(1) an official's use of his official position,

(2) to intentionally engage in conduct of a sexual nature or attempt to procure sexual favors,

(3) which he knows is not welcomed by the recipient,

(4) intending submission to which to be a term or condition of the recipient's or another person's enjoyment of *something of value to that person.*

*Sanchez II,* 995 S.W.2d at 687. (emphasis added). At another point, the court wrote: "As for the phrase 'right, privilege, power, and immunity,' we need not decide whether that phrase may in some instance deprive a person of fair notice of the conduct

proscribed." *Id.* at 689. So it appears that the court also had difficulty with the phrase as did the appellant.

Further, in discussing the validity of the statute under the First Amendment, the court stated:

Sexual harassment under the statute is essentially sexual extortion: an official used his official position to coerce submission to conduct of a sexual nature. And the statute criminalizes sexual harassment that is *intentional. To be liable,* the official must intend the sexual nature of his conduct, he must be aware that the conduct is unwelcome, and he must intend submission to the conduct to be made a term or condition of enjoying something of value to the recipient or another person—something of value *that the official is in a position to withhold or provide. In other words, the official must intend to carry out sexual extortion.*

*Id.* at 688 (emphasis added). Here, the court adds another element—the defendant must be in a position to withhold or provide "something of value." *Id.* The court had likened the offense to bribery or extortion. *Id.*

Upon the first remand to this Court, the parties were allowed to rebrief the case as required by *Theus v. State,* 863 S.W.2d 489, 491 (Tex.Crim.App.1993). This Court sustained two of appellant's points of error—that the trial court erred in overruling appellant's pretrial motion to quash the indictment because the indictment (1) did not allege an offense by failing to allege a required culpable mental state; and (2) did not specify what "rights, privileges, powers and immunities" were involved in the case so to give appellant proper notice of the nature and cause of the accusation against him. *See Sanchez v. State,* 32 S.W.3d 687, 698–99 (Tex.App.-San Antonio 2000) (*Sanchez III* ). The other points of error were

not reached. *Id.* at 701. The judgment was again reversed and the cause remanded to the trial court. *Id.*

The petition for discretionary review was again granted. In *Sanchez v. State,* 120 S.W.3d 359 (Tex.Crim.App.2003) (*Sanchez IV*), the Court of Criminal Appeals rejected this Court's reasoning as to appellant's first point of error in *Sanchez III.* There was a pretrial motion to quash the indictment on the basis that it did not allege criminal conduct or an offense. The Court of Criminal Appeals held that the pretrial motion failed to specify the indictment's failure to allege the culpable mental state of awareness as later developed by *Sanchez II. Sanchez IV,* 120 S.W.3d at 364. Thus, the court held that appellant failed to preserve error and presented nothing for review under article 1.14(b) of the Texas Code of Criminal Procedure.[6] *Id.* 368. The court also concluded that the "right not recognized" exception to the contemporaneous objection rule relates to a kind of fundamental error that is contrary to a specific act of the legislature and which *Marin* had generally eliminated from our jurisprudence. *Id.* at 367, 368; *see also Marin v. State,* 851 S.W.2d 275 (Tex.Crim. App.1993).[7]

The second point of error in *Sanchez III* was that the trial court erred in failing to grant the pretrial motion to quash because the indictment failed to specify which "rights, privileges, powers, and immunities" were at issue in the case and did not give him the constitutionally required notice of the nature and cause of the accusa-tion against him. 32 S.W.3d at 698–99. This Court sustained that contention. The Court of Criminal Appeals noted that the State had not challenged this Court's holding, but attacked only this Court's harmless error analysis. *Sanchez IV,* 120 S.W.3d at 367.

While the Court of Criminal Appeals acknowledged that "rights, privileges, powers, and immunities" were "statutory elements," it rejected our harm analysis and remanded the cause for re-consideration of the harm issue. *Id.* at 368. It is obvious that the Court of Criminal Appeals intended that any new harm analysis be conducted under *Adams v. State,* 707 S.W.2d 900 (Tex.Crim.App.1986), regarding defects of form in the charging instrument.

## ISSUE ON REMAND

### THE INDICTMENT

We observe that the amended indictment upon which appellant was tried alleged in pertinent part:

> on or about the 1st day of August, A.D., 1994, through on or about the 15th day of February, A.D., 1995, ARTURO SANCHEZ, while acting under color of his office as a public servant, to wit: an officer, employee and agent of government, namely: Chairman and Board Member of the Board of Trustees of VIA METROPOLITAN TRANSIT, did intentionally subject DIANE GONZALEZ to sexual harassment, namely: unwelcome sexual advances, requests for

---

**6.** Tex.Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).

**7.** Judge Womack wrote the opinion in *Sanchez v. State,* 120 S.W.3d 359 (Tex.Crim.App. 2003) (*Sanchez IV*) for the court. In *Sanchez v. State,* 995 S.W.2d 677, 692–93 (Tex.Crim. App.1999) (*Sanchez II*), Judge Womack wrote a concurring opinion but expressly disagreed with the majority opinion that there was a

culpable mental state element other than "intentionally" to be found in the statute. Thus, *Judge Womack did not agree with footnote 7* of the majority opinion or the majority's language that "the perpetrator must necessarily be aware that the sexual conduct is in fact unwelcome to be liable under the statute." *Sanchez II,* 995 S.W.2d at 685.

sexual favors, and other verbal and physical conduct of a sexual nature, by stating to DIANE GONZALEZ (hereinafter referred to as "COMPLAINANT") to the effect: that if COMPLAINANT did not have a sexual affair with him he would fire her; that to get an office, a secretary and a raise COMPLAINANT must have a sexual affair with him; that he had a sexual affair with another VIA employee and he would have a sexual affair with COMPLAINANT also; that he would have a sexual affair with COMPLAINANT, that COMPLAINANT should have a sexual affair with him because people already thought they were having a sexual affair; that COMPLAINANT must put on lipstick; that he would like COMPLAINANT to wear low-cut dresses; that he would like COMPLAINANT to wear black pantyhose and silk blouses because she looked better in them; that upon seeing a bruise on COMPLAINANT'S leg, that he asked COMPLAINANT if she was bruised from rough sex with her husband, and that he liked rough sex; and by touching DIANE GONZALEZ with his hand on her face, submission to which was explicitly and implicitly made a term and condition of DIANE GONZALEZ's exercise and enjoyment of her rights, privileges, powers and immunities. . . .

The one-count and one-paragraph indictment alleged ten separate offenses.[8] The trial court later submitted these ten offenses to the jury disjunctively in the court's charge. Understandably, the indictment did not allege the essential elements of the offense which the court in *Sanchez II* found inherent in section 39.03(c) in order to render it constitutional.[9]

Appellant filed a motion to quash the original and then the amended indictment on the basis that each failed to specify what alleged "rights, privileges, powers, and immunities" of the complainant's were made a term or condition of the ten alleged acts of conduct by appellant. Appellant expressly relied upon the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, article I, secs. 10 and 19 of the Texas Constitution, and articles 21.01, 21.02(7), 21.03, 21.04 and 21.11 of the Texas Code of Criminal Procedure. Appellant's motion to quash on this basis was overruled each time.

The State acknowledged that the trial court erred in overruling the motion to quash. Nevertheless, an examination of the error furnishes further background for our harm analysis.

■ Section 39.03(c) uses the phrase "any right, privilege, power, and immunity." The indictment used the plural form of each word in the statutory phrase without specification. None of the terms are defined in the statute, in the Penal Code, or in the Code of Criminal Procedure. Undefined words are ordinarily given their common meaning unless the statute clearly shows that they were used in some other sense. *See Daniels v. State*, 754 S.W.2d 214, 219 (Tex.Crim.App.1988).

■ As we have seen, appellant was not the only one who had difficulty with

---

8. Appellant filed a motion to quash the indictment on the basis of duplicity—there being more than one offense charged in the indictment. *See* Tex.Code Crim. Proc. Ann. art. 21.24(b) (Vernon 1989). The motion was overruled. Appellant has not pursued this matter on appeal.

9. In *Sanchez v. State*, 120 S.W.3d 359, 363 (Tex.Crim.App.2003) (*Sanchez IV*), the Court of Criminal Appeals stated: "We express no opinion as to whether the indictment was defective."

the indictment's allegations. The Court of Criminal Appeals could not decide the scope of "rights, privileges, powers, and immunities" and substituted for its purposes the phrase "anything of value to a person." *See Sanchez II*, 995 S.W.2d at 686, 687, 689. Appellant was unable on his own to use a substitute. It is understandable then what appellant sought by means of his motions to quash the indictment. Otherwise, appellant could not prepare a defense and anticipate the State's evidence. Generally, an indictment which tracks the statutory language will survive a motion to quash the pleadings. *Olurebi v. State*, 870 S.W.2d 58, 62 (Tex.Crim.App. 1994). However, if "the statutory language is not completely descriptive of the offense, then additional specificity will be required in the face of a timely motion to quash" the indictment. *DeVaughn v. State*, 749 S.W.2d 62, 69 (Tex.Crim.App. 1988). A statute which uses an undefined term of indeterminable and variable meaning requires more specific pleading in order to notify the defendant of the nature and cause of the accusation against him. *State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim.App.1998); *Tullous v. State*, 23 S.W.3d 195, 197 (Tex.App.-Waco 2000, pet. ref'd). The words "rights, privileges, powers, and immunities" are *each* undefined terms with indeterminable and varied meanings. These broad terms are used in a variety of contexts and are sometimes overlapping in meaning.[10] *See Sanchez I*, 974 S.W.2d at 314.

## CONSTITUTIONAL RIGHTS

 Next, we turn to the constitutional and statutory rights that are involved in a challenge to a charging instrument that are often ignored by cases using the *Adams* harmless error analysis. The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions the accused shall enjoy the right ... to be informed of the nature and course of the accusation...." U.S. CONST. amend. VI. This Sixth Amendment right is applicable to state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article I, Section 10 of the Texas Constitution provides in part: "[in] all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof." TEX. CONST. art. I, § 10. These constitutional guarantees require that notice [of the nature and cause of the accusation] be given with sufficient clarity and detail to enable the defendant to anticipate the state's evidence and pre-

---

**10.** "Right" is defined in BLACK'S LAW DICTIONARY, 1322–27 (7th ed.1999) with five meanings and the definitions of at least thirty-five types of rights. "Privilege" is defined in the same dictionary as "(1) a special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty," or (2) an affirmative defense, or (3) an evidentiary rule, along with the definitions of numerous types of privileges including absolute, conditional, qualified, and special privileges, and many other known legal privileges. BLACK'S LAW DICTIONARY 1215–1217 (7th ed.1999). "Power" is given five different meanings in BLACK'S LAW DICTIONARY 1189 (7th ed.1999), including "[T]he ability to act or not act;" in addition, a number of other types of "power" are defined. These, *inter alia*, involve appendant, beneficial, collateral, general, implied, incident, inherent, naked, plenary, power coupled with interest, power in gross, etc. "Immunity" is defined as (1) any exemption from a duty, liability, or service of process ... (2) a doctrine providing a complete defense to a tort action. BLACK'S LAW DICTIONARY 752–53 (7th ed.1999). Under the first definition, some fourteen types of immunity are defined, including absolute, discretionary, qualified and work-product immunity. Under the second definition, other types of immunity defined include charitable, corporate, martial, parental, pocket, testimonial use, etc. *Id.* at 753–754.

pare a proper defense to it. *See Garcia v. State,* 981 S.W.2d 683, 685 (Tex.Crim.App. 1998); *Flores v. State,* 33 S.W.3d 907, 917 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). This was recently explained in *State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim.App.2004) (citing, *inter alia, Mays,* 967 S.W.2d at 406 and *Daniels v. State,* 754 S.W.2d 214, 217 (Tex.Crim.App.1988)). Under Article I, Section 10 of the Texas Constitution, the requisite notice must come from the face of the indictment. *Riney v. State,* 28 S.W.3d 561, 565 (Tex.Crim. App.2000); *Benoit v. State,* 561 S.W.2d 810, 813 (Tex.Crim.App.1977); *Voelkel v. State,* 501 S.W.2d 313, 315 (Tex.Crim.App. 1973); *see also Eastep v. State,* 941 S.W.2d 130, 132 (Tex.Crim.App.1997), *overruled on other grounds, Riney,* 28 S.W.3d at 566.

■ In *Moff,* 154 S.W.3d at 601, the court observed:

> In addition, the Texas Code of Criminal Procedure provides guidelines relating to the sufficiency of an indictment. *See, e.g.,* Article 21.03 ("Everything should be stated in an indictment which is necessary to be proved."); Article 21.04 ("The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."); Article 21.11 ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment ...")

In light of the constitutional guarantees and the statutory provisions, an indictment must allege in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged. *See Garcia,* 981 S.W.2d at 685; *Bynum v. State,* 767 S.W.2d 769, 778–79 (Tex.Crim.App.1989).

■ These fundamental guarantees enable the defendant to learn in advance of trial with such certainty that a presumptively innocent person will know what he will be called upon to defend against. *See Wilson v. State,* 520 S.W.2d 377, 379 (Tex. Crim.App.1975); *State v. Draper,* 940 S.W.2d 824, 826 (Tex.App.-Austin 1997, no pet.). It is not sufficient to say that the accused knew with what offense he was charged, but the inquiry must be whether the charge in writing furnished that information in plain and intelligible language. *See Benoit,* 561 S.W.2d at 813; *Moore v. State,* 473 S.W.2d 523, 523 (Tex.Crim.App. 1971); *Draper,* 940 S.W.2d at 826. Article I, section 10 constitutionally requires that the charging instrument *itself* convey adequate notice of the act or omission alleged so a defense may be prepared in advance of trial. *See State v. Carter,* 810 S.W.2d 197, 199 (Tex.Crim.App.1991); *Wilson v. State,* 825 S.W.2d 155, 160 (Tex.App.-Dallas 1992, pet. ref'd). Adequate notice must come from the face of the indictment. *State v. Bartee,* 894 S.W.2d 34, 39 (Tex. App.-San Antonio 1994, no pet.). The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish. *Brasfield v. State,* 600 S.W.2d 288, 295 (Tex.Crim.App.1980), *overruled on other grounds, Janecka v. State,* 739 S.W.2d 813, 819 (Tex.Crim.App. 1987); *Drumm v. State,* 560 S.W.2d 944, 947 (Tex.Crim.App.1977).

Only recently in *Moff,* 154 S.W.3d at 602, the Court of Criminal Appeals stated:

> Because of the fundamental notions of fairness that require adequate notice of the nature of the charges against the accused in our system of justice, a time-

ly claim of inadequate notice requires careful consideration.... When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice. *Drumm*, 560 S.W.2d at 946–47. Thus, the accused has the right to notice that is specific enough to allow him to investigate the allegations against him and establish a defense.

## FORM AND SUBSTANCE

Texas statutes and caselaw have recognized a distinction between allegations in a charging instrument as to form and substance. *See* TEX.CODE CRIM. PROC. ANN. art 27.08 (Vernon 1989) (exceptions to substances); TEX.CODE CRIM. PROC. ANN. art. 27.09 (Vernon 1989) (exceptions to form); *Peralez v. State*, 630 S.W.2d 330, 331 (Tex. App.-Houston [14th Dist.] 1982, no pet.). Whatever change the distinction has undergone since the 1985 revisions in the charging instrument law (*see* TEX. CONST. art. V, § 12 and TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005)), "the distinction is still important for purposes of appellate review of a trial court's erroneous rejections of defendant's objections to charging instruments." 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 20.42 (2d ed.2001). Failure to sustain a valid motion to quash raising a defect of substance apparently requires automatic reversal regardless of harm. *Id.* An error in failing to sustain an objection raising a defect of form does not require reversal if the defect did not prejudice the substantial rights of the defendant. *See* TEX.CODE CRIM. PROC. ANN. art. 21.19 (Vernon 1989); 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 20.42 (2d ed.2001).

"Form" and "substance" are not defined in either the Penal Code or the Code of Criminal Procedure. The list of exceptions contained in articles 27.08 and 27.09 of the Code of Criminal Procedure is merely representative and is not exclusive or exhaustive so as to constitute definitions for "form" or "substance." *See Anderson v. State*, 905 S.W.2d 367, 370 (Tex.App.-Fort Worth 1995, pet. ref'd). When words are not defined statutorily they are ordinarily given their plain meaning. *Daniels*, 754 S.W.2d at 219.

"Defect of form" has been defined as "an imperfection in the style, manner, arrangement or *nonessential part of a legal document,* as distinguished from a defect of substance." BLACK'S LAW DICTIONARY 429 (7th ed.1999) (emphasis added). A "defect of substance" is defined as "an imperfection in the substantive part of a legal document as by omitting an essential term." *Id.* "Substance" is defined as "the essence of something; the essential quality of something, as opposed to mere form." *Id.* at 1442.

Article 21.19, the basis of the *Adams* decision, and its predecessors were long interpreted as applying only to defects of form in the charging instruments such as the incorrect name of the court and its term. *See Rodriguez v. State*, 899 S.W.2d 658, 664 (Tex.Crim.App.1995); *Spriggs v. State*, 640 S.W.2d 781, 784 (Tex.App.-Fort Worth 1982), *aff'd*, 652 S.W.2d 405 (Tex. Crim.App.1983). Allegations regarding the grand jury term, and style and manner of the cause are also matters of form. *See Stansbury v. State*, 128 Tex.Crim. 570, 82 S.W.2d 962, 964 (1935).

Article 21.19 and its forerunners were a progeny of the "common sense indictment act." *See* Acts 1881 17th Leg. R.S. ch. 57, § 17, 1881 Tex. Gen. Laws 60, 63 ("approved" March 26, 1881). The statuto-

ry language has remained the same since 1881 and until the *Adams* decision in 1986 it was applied only to matters of "form" as generally discussed above.

Before its 1985 amendment, article 28.10 of the Code of Criminal Procedures and its forerunners provided:

> Any matter of form in an indictment or information may be amended at any time before an announcement of ready for trial upon the merits by both parties, but not afterward.

Act of May 27, 1965, 59th Leg. R.S., ch. 722, § 1, 1965 Tex. Gen. Laws, 317, 434; *see also* articles 533, 598 and 587 of earlier codes of criminal procedure.[11] Thus, a defect in form in a charging instrument had to be raised prior to trial and the State was given an opportunity to amend as to form, which opportunity was frequently used when there was such a defect. On appeal, a claimed defect of form would be held to be waived if not timely raised in the court below. Thus defects of form in charging instruments were not reoccurring issues in appellate courts. Even when timely raised by a motion to quash which was erroneously overruled, a defect of mere form must prejudice a defendant's substantial rights to constitute reversible error. *See* TEX.CODE CRIM. PROC. ANN. art. 21.19 (Vernon 1989). Thus, article 21.19 and its forerunners were a back-up to prevent reversal for a defect of a non-essential part of a charging instrument as was intended by the 1881 Common Sense Indictment Act.

There was and still is no *statutory* harmless error rule where the defect in the indictment or information was or is one of substance. *See Pospishel v. State*, 95 Tex.Crim. 625, 255 S.W. 738, 738–39

(1923). This was certainly so prior to the 1985 amendments because a defect of substance existed when it did not appear from the charging instrument that the defendant had committed an offense or that the offense had not been fully charged. Before 1985, a defect of substance such as a failure to allege an essential element of the offense charged was a fundamental defect which rendered the charging instrument insufficient to invoke the trial court's jurisdiction. *See Studer v. State*, 799 S.W.2d 263, 266–67 (Tex.Crim.App.1990); *Gengnagel v. State*, 748 S.W.2d 227, 230 (Tex. Crim.App.1988).

There was no need for a statutory harmless error provision for defects of substance. Prior to the 1985 amendment to article 28.10 of the Code of Criminal Procedure, a defect of substance could never be amended. If such an issue was raised in the trial court by a motion to quash the charging instrument or otherwise, indictments were frequently dismissed and prosecutors returned to the grand jury for a new indictment. Great care was exercised by prosecutors in drafting indictments in the first place, and greater caution was exhibited in presenting a re-drafted indictment to a grand jury.

In 1974, along came *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex. Crim.App.1974), dealing with misdemeanor convictions based on violations of the Water Code. The court was confronted, *inter alia*, with a ground of error (now point or issue) complaining of the allegations in the information. *Id.* at 602. It was contended in three separate matters that in two situations the allegations of the information were general, vague, and indefinite, and that no criminal offense was alleged. *Id.*

---

11. In 1985, article 28.10 of the Code of Criminal Procedure was amended to allow timely amendment of the charging instrument both as to form and substance. TEX.CODE CRIM. PROC. ANN. art. 28.10 (Vernon 1989); Act of May 25, 1985, 69th Leg., R.S., ch. 577, § 1, 1985 Tex. Gen. Law 2196, 2197.

The ground presented was multifarious and presented nothing for review. *Id.* Further, the record did not show that the motions to quash were presented to the trial court or that a ruling thereon was secured. *Id.* at 604. There was no statement of facts (court reporter's record). *Id.* at 601. No court reporter had been requested. *Id.* at 605. Moreover, the complaint about the allegations being "general, vague, and indefinite" could not be raised for the first time on appeal. *Id.* at 604. The court, however, was obviously concerned about the claim that the information did not charge an offense—that being fundamental error.[12] The court noted that *Terry v. State*, 471 S.W.2d 848, 852 (Tex.Crim.App.1971), had divided the necessary allegations of an indictment into three parts—that the indictment must allege on its face the facts necessary (1) to show the offense was committed, (2) to bar a subsequent prosecution for the same offense, and (3) to give the defendant notice of what he is charged with. *American Plant Food Corp.*, 508 S.W.2d at 603. *American Plant Food Corp.* reasoned that the last two requirements of *Terry* while "relating to substance of the charge in one sense" was an exception to form not substance. 508 S.W.2d at 603. This was done by reference to only several statutory provisions and was done totally without constitutional considerations, particularly Article I, Section 10 of the Texas Constitution. *Id.* Nevertheless, the *American Plant Food Corp.* decision held that the failure of a charging instrument to allege facts sufficient to give the defendant notice of precisely what he is charged with is a ground for an objection to form under articles 27.09(2) (exceptions to form) and 21.21(7) (must allege in plain and intelligible language) of the Code of Criminal Pro-

cedure. *Id.* Finding no ruling on an objection as to form, the Court held that any error was waived. 508 S.W.2d at 604. Article 21.19 of the Code of Criminal Procedure, the statutory harmless error standard for a defect of form only, was not cited or mentioned in the opinion.

In his dissenting opinion on original submission in *Janecka v. State*, 739 S.W.2d 813, 838 (Tex.Crim.App.1987), Judge Duncan, discussing the *American Plant Food Corp.* decision, pointed out that "to argue that the failure of an indictment to provide adequate notice in which to formulate a defense to a prosecution is a matter of mere form rather than substance ignores both the invaluable purpose of the indictment and ... [that] notice does have a relationship to the substance of an indictment." As one commentator has noted:

> "A defendant's right to notice of the charges brought against him sufficient to enable him to adequately put the prosecution to its burden of proving guilt beyond a reasonable doubt is a fundamental tenet of criminal procedure. It is unquestionably protected by both federal and state constitutional law."

George E. Dix, *Texas Charging Instrument Law: Recent Development and the Continuing Need for Reform*, 35 BAYLOR L.REV. 689, 695–96 (1983) (citing *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)).

In *Adams v. State*, 707 S.W.2d 900, 901 (Tex.Crim.App.1986), the information charged the defendant with promoting obscenity by exhibiting an untitled motion picture. The information was challenged by motion to quash based on the lack of sufficient notice so that the defendant could prepare his defense. *Id.* Recogniz-

---

12. Neither the information nor the motion to quash are set out in the *American Plant Food* *Corp.* opinion.

ing the constitutional requirements of article I, section 10 of the Texas Constitution, *Adams* nevertheless relied upon the *American Plant Food Corp.* decision as holding that the failure of a charging instrument to give the accused notice of precisely what he was charged with is a ground for an exception to form under articles 27.09(2) and 21.21(7) of the Code of Criminal Procedure. *Adams*, 707 S.W.2d at 901, 903[13] Acknowledging that the trial court erred in denying the motion to quash, *Adams* held that only a defect of form was involved and that article 21.19 was applicable. *Id.* at 902. That statute provides:

> An indictment shall not be held insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.

---

**13.** Article 27.09 of the Code of Criminal Procedure provides in part: "Exceptions to the form of an indictment or information may be taken for the following causes only: . . .

(2) The want of any requisite prescribed by Articles 21.02 [requisites of an indictment] and 21.21."
Tex.Code Crim. Proc. Ann. art. 27.09(2) (Vernon 1989).

Article 21.21(7) of the Code provides in part: "An information is sufficient if it has the following requisites: . . . (7) That the offense be set forth in plain and intelligible words."
Tex.Code Crim. Proc. Ann. art. 21.21(7) (Vernon 1989).

**14.** It is interesting to observe that in *Adams*, 707 S.W.2d 900, 904 (Tex.Crim.App.1986), the defendant presented no defense. He offered no evidence. Legally, he was not required to do so. A defendant in a criminal case is presumed to be innocent and the burden of the proof is on the State to prove each element of the case beyond a reasonable doubt. *See* Tex. Pen.Code Ann. 2.01 (Vernon 2003); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Short v. State*, 874 S.W.2d 666, 667 (Tex.Crim.App. 1994); *Webber v. State*, 29 S.W.3d 226, 234

Tex.Code Crim. Proc. Ann. art. 21.19 (Vernon 1989).

Although article 21.19 and its forerunners since 1881 had not generally been made applicable to the requisite notice of precisely what the defendant was charged with, *Adams* held that the requisite notice was mere form. *Adams* explained how the statutory harm analysis in article 21.19 was to be applied:

> The first step . . . is to decide whether the charging instrument failed to convey some requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

*Adams*, 707 S.W.2d at 903.[14]

For the first time this standard was added to an application of article 21.19.

---

(Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

Moreover, a "defense" or an "affirmative defense" is not recognized unless it is so labeled in the penal code. *See* Tex. Pen.Code Ann. §§ 2.03, 2.04 (Vernon 2003). Although the trial court erred in denying the motion to quash, Adams failed to show how the defect in the information impacted his "defense" of resting with the State and arguing that the State had not proven its case beyond a reasonable doubt. *Adams*, 707 S.W.2d at 903–04.

*Adams* was decided in 1986 in the direct aftermath of the 1985 amendment to article V, section 12 of the Texas Constitution and the 1985 enactments amending articles 1.14, 28.09 and 28.10 of the Code of Criminal Procedure, Act of May 25, 1985, 69th Leg., R.S., ch. 577, § 1, 1985 Tex. Gen. Laws 2196, 2197, when any claimed defect in a charging instrument was suspect, and when the members of the Texas Court of Criminal Appeals were split over the conflict between *Craven v. State*, 613 S.W.2d 488 (Tex.Crim.App.1981), and *Jeffers v. State*, 646 S.W.2d 185 (Tex. Crim.App.1981), and in light of the particular facts in the misdemeanor obscenity case of *Adams* itself involving only two films or motion pictures.

Under the *Adams* approach, a presumptively innocent defendant may establish his constitutional claim to the requisite notice on the face of the charging instrument but if his motion to quash or other valid objection is overruled, his unremedied error preserved for review may matter not. This is so because the requisite notice has been diluted to "form" so that article 21.19 and the *Adams* steps or standards come into play to nullify the trial court's error.

Just how does the reviewing court approach the "error" that may be involved? Under the *Adams* analysis, the nature of the question and the scope of the appellate court's inquiry is not altogether clear. *See* 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 21.148 (2d ed. 2001 & Supp. 2004). In *Janecka v. State*, 823 S.W.2d 232, 236 (Tex.Crim.App.1990), the court characterized the *Adams* analysis as posing a question of "law." This would indicate that there is to be a *de novo* determination by the appellate court. In many cases, however, the trial court will not have had an opportunity to rule on the harm issue under *Adams*.

In addition, Professors Dix and Dawson have written:

> The difficulty would be in how to conceptualize the error. If the error was that of the trial judge, it was overruling the motion to quash the charging instrument. Superficially, at least, such error would seem to automatically require reversal, since no trial or conviction could have been obtained if the charging instrument was invalidated.
>
> *Adams* makes clear that [in] those situations to which it applies, the quest for harm focuses not upon the trial judge's ruling but instead upon the defect in the charging instrument. *This is inconsistent with general harmless error analysis, under which the trial judge's action is the focus of inquiry.* Arguably the real significance of article 21.19 under *Adams* is not its criterion for determinating harm but rather its direction to focus upon the erroneously unremedied defect in the charging instrument rather than upon the trial judge's ruling.

41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 21.147 (2d ed.2001) (emphasis added).

Which party then bears the burden of persuading the reviewing court on the matter? If an appellant has established his challenge to the charging instrument has merit, but the challenge is erroneously overruled and error is preserved, who has the burden of proof when the *Adams* analysis is applied? Who is the beneficiary of the error? Whatever *Adams* may have intended, post-*Adams* cases make clear that an appellant must additionally establish that he was harmed by the unremedied error he preserved for review. *See Chambers v. State*, 866 S.W.2d 9, 17 (Tex. Crim.App.1993); *Labelle v. State*, 720 S.W.2d 101, 107–08 (Tex.Crim.App.1986); *Garay v. State*, 954 S.W.2d 59, 65 (Tex. App.-San Antonio 1997, pet. ref'd) (defendant failed to show a "deleterious" impact on his ability to prepare a defense); 41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 21.148 (2d ed.2001). To shoulder this burden, a presumptively innocent defendant at trial must not only defend against the accusation brought against him which he claims provided inadequate notice, but he also must consistently make a record in order to establish on appeal the actual harm he suffered by the erroneous overruling of his motion to quash the charging instrument.

This wayward course of harmless error analysis under *Adams* is contrary to the

more recent harmless error analysis applied by the Court of Criminal Appeals decisions either under the statutory harmless error standard of article 36.19 of the Code of Criminal Procedure and *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (op. on reh'g) or under rule 44.21(b) of the Texas Rules of Appellate Procedure. *See, e.g., Burnett v. State,* 88 S.W.3d 633, 638 (Tex.Crim.App.2002); *Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim.App.2001); *Ovalle v. State,* 13 S.W.3d 774, 787 (Tex.Crim.App.2000). *Ovalle* involved a jury charge error. There, the court pointed out that it does not resolve a harmless error analysis by asking whether appellant met a burden of proof, for no party should have the burden of proving harm from an error, and ordinarily there is no way to prove actual harm. *Id.* at 787.

Despite the questions surrounding *Adams,* that decision has been consistently followed. *See, e.g., White v. State,* 50 S.W.3d 31, 39–40 (Tex.App.-Waco 2001, pet. ref'd); *Flores v. State,* 33 S.W.3d 907, 908 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Our research reveals that appellants have been unable to sustain the burden imposed by the *Adams* standard in few, if any,[15] cases. Before engaging in any harm analysis in the instant case under *Adams,* it is important to observe how current Texas law deals differently with a claimed constitutional and statutory error in the failure of a charging instrument to give precise notice to an accused of the accusation against him depending on whether the trial court grants or denies a timely motion to quash or set aside the charging instrument.[16] If the trial court grants the motion to quash, the State may amend the charging instrument as to form or substance, *see* Tex.Code Crim. Proc. Ann. art. 28.10 (Vernon 1989), seek a new indictment from the grand jury, file a new complaint and information, or appeal the trial court's adverse ruling under certain conditions. *See* Tex.Code Crim. Proc. Ann. art. 44.01 (Vernon Supp.2004–05). When such an appeal is taken by the State from the adverse ruling, the issue is the sufficiency of the charging instrument. The standard of review is no longer an abuse of discretion standard but a *de novo* one. *State v. Moff,* 154 S.W.3d at 601. In such situations, the reviewing court will rule on the issue as a matter of law. There having been no trial before appeal, the situation is not subject to a harm analysis. *Id.* at 604.

On the other hand, if the trial court denies the motion to quash the charging instrument, even in error, the situation on appeal is entirely different. The defendant has no pretrial right of appeal. A trial follows the pretrial ruling and on appeal, after conviction, it matters not that the trial court's ruling was erroneous as a matter of law. The question is whether the defendant can show actual harm from the constitutional right denied him and which was duly preserved for review. The burden is on the appellant. *Adams,* 707 S.W.2d at 903. Because the requisite notice has been reduced to mere form, any defect of form is considered under article 21.19 as interpreted by *Adams.* The defendant may have been "done wrong," and been deprived of a valuable right in preparing and presenting his defense, but he has the burden of persuading the review-

---

15. *See Janecka v. State,* 823 S.W.2d 232 (Tex. Crim.App.1990) (where cause had been remanded to trial court for hearing on harm because cause was tried before *Adams* decision).

16. The reader is cautioned that we are *not* dealing with a situation where there is a defect in the charging instrument and the defendant has failed to object or file a motion to quash the charging instrument and thus waived his claim. *See* Tex.Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).

ing court that he has suffered harm from "the context of the case" as prescribed by *Adams*.

There can be no question that on appeal either by the State (pretrial) or by the defendant (direct appeal after conviction), the procedures and rules are different. Moreover, there is great tension between cases interpreting article I, section 10 of the Texas Constitution and our statutory provisions regarding charging instruments and those cases decided under the *Adams* line of cases (*Adams* to *Kellar*).

## RECONSIDERATION OF THE HARM ISSUE

With this background, we shall reconsider the issue of harm in the instant case under the *Adams* decision as we have been instructed to do. *See Sanchez IV*, 120 S.W.3d at 368. And we do so with the understanding that the State has acknowledged that the trial court erred in overruling the motion to quash the indictment.

In the instant case, appellant was charged with ten separate offenses allegedly occurring over a span of time (on or about August 1, 1994 through February 15, 1995, all in Bexar County) under a newly-minted statute that has not been utilized since 1996. The statutory language in section 39.03(c) is awkward and ambiguous as recognized by the opinions in *Sanchez I* and *Sanchez II*. The indictment has been set out earlier; it is no candidate for the Good Housekeeping Seal of Approval. The Court of Criminal Appeals would not express an opinion on whether the indictment was defective. *Sanchez IV*, 120 S.W.3d at 363. The indictment does not set out all the essential elements of the offense as declared by *Sanchez II*, 995 S.W.2d at 687.

In order to prepare his defense to the ten offenses alleged in the one-count indictment, appellant moved to quash the indictment for its failure to specify the terms and conditions of the "rights, privileges, powers and immunities" of the complaints that were involved in each of the ten offenses, if any. Both of appellant's pretrial motions on this basis were overruled. The error was preserved for review. Appellant was left to speculate what rights, immunities, etc. the State would seek to prove, hampering any investigation and preparation for trial.

In its latest brief, the State asserts that it informed appellant of the "rights, privileges, powers, and immunities" involved when it filed its pretrial motion of intention to introduce extraneous offenses or matters. This assertion is without specification. Reference is made to the record. We find the said pretrial motion in the record, but it is unindexed and does not appear to bear the file mark of the district clerk. A close examination of the motion itself also does not support the State's assertion in its brief. The prosecution apparently relies upon the written statements of the complainant attached to the pretrial motion. These statements do not mention or designate any "rights, privileges, powers, and immunities" as such. The State urges that appellant should have drawn an inference from these attached statements as to the matters alleged in the indictment as unspecified "rights, privileges, powers, and immunities" and the terms and conditions relating thereto. We do not agree that this claimed discovery was sufficient to give appellant notice precisely of the charges against him. Moreover, the State does not explain just how any inference should have been limited to any particular right, privilege, power, and immunity or a combination thereof. We do not find any other claimed discovery that would suffice under *Adams* for the requisite notice.

Turning to the "context of the case" as mandated by *Adams*, we begin with the observation of the Court of Criminal Appeals in *Janecka*, 823 S.W.2d 232 (Tex. Crim.App.1990), a post-*Adams* case:[17]

> It is difficult to measure the equity in requiring a defendant to prepare for trial, especially in a capital case, without benefit of notice of a highly material, if not "substantive" factor being revealed by the State in its indictment which will allow investigation and strategic decisions regarding the case to be made.

*Id.* at 237.

While this case is not a capital murder case, the same elements of fairness are inherent here which is the genius of our Texas justice system. We now examine the record to determine if appellant received notice that he did not get from the face of the indictment.

## INVESTIGATION

An investigation may have revealed *some* of the complainant's numerous "rights, privileges, powers, and immunities," but Appellant would still have to speculate which matters the State would seek to prove to support the inadequate allegations as to the ten offenses.

## VOIR DIRE EXAMINATION

During the voir dire examination of the jury panel, the State did not attempt to explain the meaning of the "statutory elements" of "rights, privileges, powers and immunities." Appellant received no requisite notice from the State's actions during the voir dire examination. Appellant's counsel likewise did not interrogate the prospective jurors about the matters not revealed by the State. Understandably, counsel did not want to speculate about the varied meanings of the broad terms used and their scope during voir dire examination, when to do so might be totally irrelevant, possibly prejudice his client, and consume valuable time without aiding him in the selection of a jury. There is a strong presumption that counsel rendered adequate assistance and made significant decisions in the exercise of reasonable profession judgments. *See Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The right to pose questions and intelligently exercise challenges to prospective jurors are included within the constitutional right to counsel. *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex.Crim.App.1999); *Raby v.*

---

17. In *Janecka v. State*, 739 S.W.2d 813 (Tex. Crim.App.1987) (*Janecka* I), Judge Rusty Duncan dissented on original submission to the majority opinion which had relied on *Adams* stating in part:

> *The difficulty I have with such reasoning is that it essentially demands the impossible:* the imposition of hindsight, the most clear and encumbered vision, upon foresight, a vision that is impaired by the unknown, with the expectation that a valid pragmatic judgment can be made. In other words, by utilizing *Adams* the majority assumes the responsibility of judging, or more appropriately surmising, whether the appellant was harmed by the deficient notice of the indictment by examining the conduct of the defense counsel during the trial, or whether an absence of harm is otherwise apparent from the record. Thus, rather than require

that the indictment set forth "[e]verything ... which is necessary to be proved," Art. 21.03 V.A.C.C.P., the majority opinion in essence holds that even though the information should have been provided the appellant, he must also prove that the refusal to give him the information affected his defense in some detrimental manner. *This amounts to the court deciding after the trial what information should be presented in the indictment before the trial because of what happened during the trial.* With all due respect to the majority's opinion, I find no logic in such reasoning.

*Id.* at 839 (emphasis added).

On rehearing, the cause was remanded to the trial court for a hearing on harm as the cause had been tried before the *Adams* decision. *Id.* at 841–42.

*State,* 970 S.W.2d 1, 10 (Tex.Crim.App. 1998) (Baird, J., concurring and dissenting). Undoubtedly, counsel was handicapped under the circumstances by not being able to interrogate the prospective jurors about the particular "rights, privileges, etc." that the State might attempt to prove and that might be submitted to the jury in the trial court's jury instruction.

## OPENING STATEMENTS

An examination of the opening statements to the jury by the parties fails to uncover any discussion about "rights, privileges, powers, and immunities." The State made no reference to this part of its task to prove the essential elements of the offenses charged beyond a reasonable doubt. *Cf.* TEX.CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon Supp.2004–05). Defense counsel was hardly in a position to tell the jury how the defense would rebut the unspecified "rights, privileges, powers, and immunities" upon which the State had continued to remain silent.

The right to make an opening statement for the defense is a valuable right. *See Norton v. State,* 564 S.W.2d 714, 718 (Tex. Crim.App.1978). The purpose of the statute, *see* TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon Supp.2004–05), is to communicate to the jury the party's theory of the case in order to aid the jury in evaluating the evidence as it is being presented. *See Abney v. State,* 1 S.W.3d 271, 274–75 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). It is evident from the context of the record that the acknowledged defect in the indictment restricted appellant's opportunity to properly voir dire the jury panel and make an effective opening statement.

## BURDEN OF PROOF

Moreover, the defect in the indictment lessened the State's burden of proof during trial. The State relied almost exclusively upon the testimony of the complainant in attempting to establish its case. Her testimony was wide-ranging and she related the ten acts of misconduct alleged, but she did not identify or mention as such which of her "rights, privileges, powers and immunities" were involved. The State did not offer evidence from other sources to identify any particular right, privilege, power and immunity as possessed by the complainant and involved in the ten acts alleged. "Notice" was not given by the State's evidence so appellant could prepare even in mid-trial to defend against the ten acts of alleged misconduct or pinpoint with any accuracy which "right, privilege, etc." the State would rely on, if any. Defense counsel had no obligation to prove the case for the State or cross-examine the complainant in order to secure the improperly denied notice as to each act alleged against appellant. The appellant was placed in the position of preparing and presenting his evidence without the notice to which he was entitled.

## CHARGE AND ARGUMENT

In light of *Adams's* "in the context of the case" standard, we observe that the trial court submitted the case to the jury in the disjunctive authorizing conviction on any one of the ten separate and distinct offenses. The phrase "rights, privileges, powers, and immunities" taken from the indictment and relating to the ten offenses was not defined or limited by the court's jury instructions. The jury was left to apply their own understanding of common usage to the many possible meanings of the pluralized terms. In arguing for an acquittal, appellant's counsel was handicapped in his jury argument to show that appellant's conduct did not fall within the endless meanings of the phrase used due to the lack of notice even as late as the State's jury argument.

Neither by allegation, notice outside the indictment by evidence, or jury instructions or argument was the involved phrase ever explained as it related to each of the ten acts attributed to appellant and submitted disjunctively to the jury. Appellant was without notice of the "statutory elements" requested for the purpose of preparation of a defense and presentation of evidence and argument.

There is a right to have the State properly put to its legitimate burden of proof beyond a reasonable doubt. *See* 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 21.150 n. 6 (2d ed.2001). Appellant was harmed in his ability to press the State to produce the proof required under a proper indictment given the circumstances described. *Cf. id.*

We continue the *Adams's* "context of the case" approach by reviewing recent cases from the Court of Criminal Appeals.[18]

### *Kellar v. State*

▮ The State relies upon *Kellar v. State,* 108 S.W.3d 311 (Tex.Crim.App. 2003), as being similar to the instant case and controlling as the lack of harm. *Kellar* is distinguishable. It involved a bench trial in which the defendant was convicted of aggregate theft of more than $20,000 but less than $100,000 of property, a third degree felony. 108 S.W.3d at 312–13; *see also* TEX. PEN.CODE ANN. §§ 31.09, 31.03(e)(5) (Vernon 2003). The defendant filed a motion to quash the indictment for its failure to state specifically each separate offense of theft that constituted the aggregation by date, alleged complainant, account, location, and type of property taken. *Kellar,* 108 S.W.3d at 312. The motion to quash was overruled. *Kellar,* a progeny of *Adams,* stated in part:

> While the statute does not require the level of specificity in an indictment urged by the appellant, a defendant does have a constitutional right to sufficient notice so as to enable him to prepare a defense. However, this due process requirement may be satisfied by means other than the language in the charging instrument. When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice

---

18. We are aware that *Sanchez IV,* 120 S.W.3d at 368, spoke of the requirement of "evidence" or "reliable evidence" in order for a defendant to show harm under *Adams.* This is a new turn of the *Adams* screw. We have found no previous cases mandating this requirement and *Sanchez IV* cites none. What does this requirement entail? Does it mean that defense counsel, while shouldering the burden of showing harm, must call another criminal defense lawyer, qualify him as an expert, and have him testify, in the jury's absence, that harm has occurred by what is reflected in the record, a matter that may well be known to any member of the bench and bar familiar with criminal law? Must defense counsel personally testify on how the lack of notice has affected his investigation, preparation, and presentation of a defense, and his defense tactics alerting the prosecution to the fact the defense is hurting? *Cf.* TEX. DISCIPLINARY R. OF PROF'L CONDUCT 3.8 (lawyer-witness rule) reprinted in 3A TEX. GOV'T CODE ANN., tit.

2, subtit. G., app. A (Vernon 1998) (TEX. STATE BAR R. art. X, §§ 6, 9). May defense counsel be cross-examined and his credibility attacked? May defense counsel substitute his late-night diary entries in lieu of testimony? Independent harm can flow from diverting defense counsel from his normal duties to consistently causing the record to reflect evidence of harm resulting from an error already preserved for review. Can actual harm be proved and should any party have the burden to prove harm from an error? *See Ovalle,* 13 S.W.3d at 787 (holding no party should have a burden to prove harm from an error).

Since the requirement of "reliable evidence" pronounced in *Sanchez IV* is new, then in all fairness this cause should be remanded to the trial court for a hearing on harm before the lack of "reliable evidence" is held fatal to appellant's claim. *See Janecka,* 739 S.W.2d at 841–42 (remanding for a hearing on harm).

of the State's theory against which he would have to defend. The record in this case clearly shows that the appellant had actual notice of the specific instances of theft upon which the State was basing its allegations. In a series of pretrial hearings, the prosecutor agreed to provide the defense with information related to the individual transactions that were aggregated in the indictment. Defense counsel had access to four binders containing documentation of 149 transactions showing instances of theft by the appellant. Furthermore, the State filed a document entitled "State's Answer to Pretrial Rulings and Notice of Extraneous Conduct," which included an itemized list of transactions upon which the State intended to rely. The list showed the date, check number, and amount of each transaction and a specific range of dates during which the transactions occurred. The State later amended its filing to provide notice of additional transactions that it intended to use in its case-in-chief, itemizing them in the same way. Finally, the State filed notice that it had filed with the court clerk bound copies of business records and affidavits to be introduced as evidence at trial. Given the extensive and detailed discovery that occurred prior to trial, the appellant had ample notice in addition to that provided by the indictment.

*Id.* at 313–14 (footnote omitted).[19]

As noted earlier, it has been said that in *Kellar* the Court of Criminal Appeals transformed the *Adams* harm analysis from a harm analysis to one that relieves the trial court of the obligation to quash the charging instrument. 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 21.147 n. 4. (2d ed. Supp.2004).

The same commentators have written:

> *Kellar* arguably reflects the court's commitment to the proposition that charging instrument requirements need not be construed or applied to provide notice. Of course, this ignores the numerous statutory requirements that clearly reflect legislative intention otherwise. These are simply ignored in the court's analysis.... Whether this in an appropriate position of policy is one question. Whether the Court of Criminal Appeals is free to adopt it given the present statutory framework for criminal pleadings is a much different one. *Kellar* did not reconcile its apparent approach with the statutory framework which, wisely or not, reflects a legislative intent to provide more charging instrument specificity than *Kellar* demands.

41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 20.211 (2d ed. Supp.2004).

Professors Dix and Dawson have further observed that the decision in *Kellar* "signals the end of any meaningful enforcement of pleading specificity requirements

---

**19.** *Kellar v. State*, 108 S.W.3d 311 (Tex.Crim. App.2003), does not reflect just which theft offenses out of the 149 plus transactions were used by the State to form the basis of the aggregation in the bench trial resulting in a third degree felony conviction. It is not clear that the defendant was able to distinguish for the purpose of notice between extraneous offenses and the offenses actually used by the State in its proof of aggregated theft. It is not proper to allege one offense and use an extraneous offense as the basis of the judgment of conviction. *See Williams v. State*, 565 S.W.2d 63, 65 (Tex.Crim.App.1978). "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

. . . .the bottom line is that an indictment for a complicated crime consisting of numerous specific acts was held not to be required to address the instances of conduct *in any way whatsoever.* If specificity requires no more than this in *Kellar,* it is unlikely to be a meaningful requirement as supplied elsewhere." 41 GEORGE E. DIX & ROBERT O. DAWSON TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 20.221 (2d ed. Supp.2004). (emphasis in original).

In *Moff,* 154 S.W.3d at 603, the Court of Criminal Appeals, in a State's appeal, disclaimed "trial by ambush" but failed to modify *Kellar.* Clearly, there is tension between *Kellar* and the long line of cases interpreting the requirements of article I, section 10 of Texas Constitution and the numerous related statutory provisions. Nevertheless the instant case was a jury trial including voir dire examination, opening statements, a jury charge and jury argument unlike the bench trial in *Kellar.* The instant case involved ten offenses submitted to the jury in the disjunctive while *Kellar* involved "one offense" in light of the statutory language of section 31.09 of the Penal Code. While there was, according to the court, overwhelming discovery in *Kellar,* that was not true in this case. We do not conclude that *Kellar* calls for a different result than we will reach.

**A DIFFERENT BURDEN OF PROOF?**

Unlike the *Adams* harmless error analysis, the burden of proof is not placed on the defendant to show harm in other statutory harm analyses, or under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Ovalle v. State,* 13 S.W.3d 774 (Tex.Crim. App.2000), involved a jury charge error under the harmless error standard of article 36.19 of the Texas Code of Criminal Procedure [20] as interpreted in *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.

1985) (op. on reh'g). In *Ovalle,* the court stated:

We do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm, as the dissent would have it. No party should have a burden to prove harm from an error, and there ordinarily is no way to prove "actual" harm. Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision.

13 S.W.3d at 787 (citing ROBERT J. TRAYLOR, THE RIDDLE OF HARMLESS ERROR 25–26 (1970)).

█ *Ovalle* made clear that no party should have the burden of proving harm from an error and questions whether there is any way to prove actual harm. It is the responsibility of the reviewing court to assess harm after reviewing the record, and the burden as to harm does not rest on an appellant or the State. *See Johnson v. State,* 43 S.W.3d 1, 5 (Tex.Crim.App. 2001). *Ovalle* has been cited with approval in other jury charge error cases, *see, e.g., Howes v. State,* 120 S.W.3d 903, 907 (Tex. App.-Texarkana 2003, pet. ref'd); *Sparks v. State,* 68 S.W.3d 6, 14 (Tex.App.-Dallas 2001, pet. ref'd), *abrogated on other grounds, Guzman v. State,* 85 S.W.3d 242 (Tex.Crim.App.2002); *Brantley v. State,* 48 S.W.3d 318, 323 (Tex.App.-Waco 2001, pet. ref'd); and in cases involving non-constitutional error under Rule 44.2(b) of the Rules of Appellate Procedure, *see e.g., Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim.App.2001) (involving erroneous admission of expert testimony); *Johnson v. State,* 43 S.W.3d 1, 4, 5 (Tex.Crim.App. 2001) (denial of challenge for cause); *Webb v. State,* 36 S.W.3d 164, 182 n. 12 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (erroneous admission of extraneous of-

---

20. *See* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981).

fenses), *McGowen v. State*, 25 S.W.3d 741, 745–46 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (denial of right to make opening statement). This same burden of proof should be applicable in any *Adams* harm analysis.

Without a reiteration of the facts and law, we conclude from *Adams's* "context of the case" that appellant's substantive rights were prejudiced by the erroneous overruling of the meritorious motion to quash the indictment. Moreover, no defect in the substance of a charging instrument should be recast as mere form in order to render the error harmless under article 21.19. That was never the intent of the Legislature. With due concern for fairness in our Texas criminal justice system, we respectfully request that the Court of Criminal Appeals reconsider the rule in *Adams*.

### UNASSIGNED ERRORS

We also are confronted with two unassigned errors in the jury charge. First, the jury was not required to find all the essential elements of the offense under section 39.03(a)(3)(c) as established by the Court of Criminal Appeals' opinion in *Sanchez II*, 995 S.W.2d at 687. Second, the jury charge submitted ten separate and distinct offenses and only a general verdict was received raising the possibility of a non-unanimous verdict. We shall consider these issues in the interest of justice.

Authority to Consider Unassigned Error

 Texas courts of appeals may entertain unassigned error. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.

1990); *Perry v. State*, 703 S.W.2d 668, 670 (Tex.Crim.App.1986); *Carter v. State*, 656 S.W.2d 468, 468–70 (Tex.Crim.App.1983). "A constitutional grant of power of appellate jurisdiction treats a right of appeal in criminal cases 'as a remedy to revise the whole case upon the laws and facts, as exhibited in the record.'" *Carter*, 656 S.W.2d at 468 (quoting *The Republic v. Smith*, Dallam, 407 (Tex.), cited in *Bishop v. The State*, 43 Tex. 390, 400 (1875)).[21] "Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute." *Carter*, 656 S.W.2d at 469. After jurisdiction attaches to a particular cause, a broad scope of review and revision has been asserted by the appellate courts of this state—one that is still recognized, acknowledged and confirmed by the Legislature. *Id.; see also* Tex.Code Crim. Proc. Ann. art. 44.25 (Vernon Supp.2004–05). In accord with *Carter* are *Lopez v. State*, 708 S.W.2d 446, 448–49 (Tex.Crim.App.1996); *Barney v. State*, 698 S.W.2d 114, 123 (Tex.Crim.App.1985); *Hall v. State*, 86 S.W.3d 235, 239 (Tex. App.-Austin 2002, pet. ref'd); *Frost v. State*, 25 S.W.3d 395, 399 (Tex.App.-Austin 2000, no pet.); *Rodriguez v. State*, 939 S.W.2d 211, 219–20 (Tex.App.-Austin 1997, no pet.); *State v. Lara*, 924 S.W.2d 198, 201 n. 3 (Tex.App.-Corpus Christi 1996, no pet.); and *Garza v. State*, 676 S.W.2d 185, 187 (Tex.App.-Corpus Christi 1984, pet. ref'd) (holding that the authority of a court of appeals to consider unassigned error in criminal cases is not open to question). *See also* 43A George E.Dix & Robert O. Dawson Texas Practice: Criminal Practice and Procedure, § 43.415 (2d ed.2001).

---

**21.** Currently, the general grant of jurisdiction to Texas courts of appeals is found in the Texas Constitution. *See* Tex. Const., art. V, § 6. It is plain that the jurisdiction includes criminal cases. *See* Tex. Const., art. V, § 5; *Rushing v. State*, 50 S.W.3d 715, 722 (Tex.

App.-Waco 2001), *aff'd*, 85 S.W.3d 283 (Tex. Crim.App.2002). The Legislature has expressly granted courts of appeals jurisdiction in criminal cases except in cases where the death penalty has been imposed. *See* Tex. Code Crim. Proc. Ann. art. 4.03 (Vernon 2005).

We recognize that the instant cause was remanded by the Court of Criminal Appeals for the reconsideration of the issue of harm on the trial court's error in overruling the motion to quash. *See Sanchez IV,* 120 S.W.3d at 367–68. However, it was a remand, not an abatement where the high court retains jurisdiction. In *Garrett v. State,* the court stated:

> When jurisdiction over the cause is restored by remand neither statutes nor scanty prior decisions cited above dictate that the court of appeals is limited in its renewed appellate consideration of the cause to the terms of our order of remand.

749 S.W.2d 784, 787 (Tex.Crim.App.1986), *overruled on other grounds,* 953 S.W.2d 234 (Tex.Crim.App.1997). The jurisdiction originally granted to the court of appeals by constitutional and statutory mandate is fully restored by the order of remand. *Adkins v. State,* 764 S.W.2d 782, 784 (Tex. Crim.App.1988). In *Calhoun v. State,* 951 S.W.2d 803, 806 (Tex.App.-Waco 1997, pet. ref'd), the court noted that it was vested with jurisdiction to address not only the specific points which were the subject of remand, but also to reconsider points of error in its earlier opinion which the Court of Criminal Appeals refused to review. *See also Johnson v. State,* 975 S.W.2d 644, 646–49 (Tex.App.-El Paso 1998, pet. ref'd).

We conclude that upon remand this Court is vested with jurisdiction to consider unassigned error. *See Carroll v. State,* 101 S.W.3d 454, 458, 460 (Tex.Crim. App.2003) (reaffirming *Adkins v. State,* 764 S.W.2d 782 (Tex.Crim.App.1988) and overruling *Williams v. State,* 829 S.W.2d 216 (Tex.Crim.App.1992) and noting that the Rules of Appellate Procedure do not specifically address the scope of a court of appeals's review following remand).

## First Unassigned Error

The unassigned error is found in the jury charge in the instant case. The conduct alleged [22] and then submitted to the jury did not fully constitute a criminal offense under section 39.03(a)(c), because the jury was not required to find certain essential elements of the offense. These elements were missing from the indictment and the court's jury charge.

There are no common law offenses in this state. *See* 18 Tex. Jur.3d, Criminal Law, § 1, n. 3 (1982). Section 1.03(a) and (b) of the Texas Penal Code provides:

> (a) Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute.
>
> (b) The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.

TEX. PEN.CODE ANN. § 1.03(a), (b) (Vernon 2005). Thus, for conduct to be criminalized, it must be defined by statute or as otherwise provided in section 1.03(a). "An individual's conduct although it may be reprehensible is not criminal unless proscribed." 22 C.J.S. *Crim. Law* § 8 (West 1980). The Legislature is vested with the lawmaking power of the people in that it may define crimes and prescribe penalties

---

**22.** A jurisdictional question is not here raised with regard to the failure of the indictment to fully allege all elements of offense.

by statute. *See* TEX. CONST. art. III, § 1; *Wesbrook v. State,* 29 S.W.3d 103, 112 (Tex.Crim.App.2000); *McNew v. State,* 608 S.W.2d 166, 176 (Tex.Crim.App.1980) (op. on reh'g); *Frieling v. State,* 67 S.W.3d 462, 468 (Tex.App.-Austin 2002 pet. ref'd); *State v. Wofford,* 34 S.W.3d 671, 676 (Tex. App.-Austin 2000, no pet.).

Section 1.02 of the Penal Code provides for the general purposes of the code and states that it should be construed to achieve the following objectives:

> (2) by definition and grading of offenses to give fair warning of what is prohibited and of the consequences of violation;

> (4) to safeguard conduct that is without guilt from condemnation as criminal;

TEX. PEN.CODE ANN. § 1.02(2), (4) (Vernon 2005). With that in mind, we observe that section 6.01(a) and (c) provides:

> (a) A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.

> (c) A person who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act.

TEX. PEN.CODE ANN. § 6.01(a), (c) (Vernon 2005).[23]

"Conduct" as used in the Penal Code "means an act or omission and its accompanying mental state." TEX. PEN.CODE ANN. § 1.07(a)(10) (Vernon 2005). "Act" means "a bodily movement whether voluntary or involuntary, and includes speech." *Id.* at § 1.07(a)(1). "Omission" means

"failure to act." *Id.* at § 1.07(a)(34). A penal statute should explicitly establish the elements of the crime it creates and provide some reasonable ascertainable standards of guilt. *See* 22 C.J.S. *Crim. Law* § 26 (West 1989). Purely statutory offenses cannot be established by implication. *Id.* at § 215. Section 1.07(a)(22) of the Penal Code provides:

> "Element of offense" means:
>
> (A) the forbidden conduct;
>
> (B) the required culpability;
>
> (C) any required result; and
>
> (D) the negation of any exception in the statute.

TEX. PEN.CODE ANN. § 1.07(a)(22) (Vernon 2005).

The Sixth Amendment to the United States Constitution guarantees a right to trial by jury while the Fourteenth Amendment focuses on due process protections which the United States Supreme Court has determined require juries to find every element of a charged offense beyond a reasonable doubt. *See* U.S. CONST. amend VI, XIV; *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1987); In re *Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also* TEX. CONST. art. I, § 19, art. V, § 13. The Penal Code also requires that *"no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."* TEX. PEN.CODE ANN. § 2.01 (Vernon 2005) (emphasis added).

 Under our statutory framework, the trial court must instruct the jury by "a written charge distinctly setting forth the law applicable to the case." *See*

---

**23.** Section 1.07(a)(30) mentioned in section 6.01(c) provides:

(30) "Law" means the constitution or a statute of this state or of the United States, a written opinion of a court of record, a

municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute. TEX. PEN.CODE § 1.07(a)(30) (Vernon 2005).

TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–05); *see also Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). "[T]he charge must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App.1995). "A jury charge which authorizes a conviction without requiring the jury to find all of the elements of the offense charged is fundamentally defective." *Evans v. State*, 606 S.W.2d 880, 883 (Tex.Crim.App.1980), *overruled on other grounds, Woods v. State*, 653 S.W.2d 1 (Tex.Crim.App.1982); *see also West v. State*, 572 S.W.2d 712, 713 (Tex. Crim.App.1978).

In the instant case, the Court of Criminal Appeals, in order to find the statute constitutional, held that certain essential elements were inherent in the statute. The elements of the offense were there from the beginning—since the statute's creation according to the Court's interpretation in *Sanchez II*, 995 S.W.2d at 687. The elements found by the court were not, however, utilized in the trial of the instant offense when the appellant was convicted. The statute was "ambiguous" in part, 995 S.W.2d at 683–84, and the trial court and parties were unaware of the elements of the offense later developed on appeal.

■ There, naturally, was no objection to the court's jury charge on this basis. The Court of Criminal Appeals interpreted article 36.19 of the Code of Criminal Procedure in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g), and set the standard of review for jury charge error. Where there is no trial objection to the charge, reversal will be obtained only if the error is so egregious and created such harm that the accused "has not had a fair and impartial trial." *Id.; see also Webber v. State*, 29 S.W.3d 226, 232 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Taylor v. State*, 7 S.W.3d 732, 736 (Tex.App.-Houston [14th Dist.] 1999, no pet.). An error results in egregious harm if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996). When conducting a harm analysis under *Almanza*, the reviewing court may consider the following factors: (1) the charge itself; (2) the state of the evidence; (3) argument of counsel, and (4) any other relevant information revealed by the record of trial as a whole. *Hutch*, 922 S.W.2d at 171. In some cases the charge itself will demonstrate egregious error. *Id.*

■ The instant jury charge in part submitted the ten alleged acts of conduct disjunctively and authorized the jury to convict appellant of any one act, if that one act involved sexual harassment, without requiring the jury to find that any form of sexual harassment under the statute had to be "unwelcome" as required by *Sanchez II*, 995 S.W.2d at 684. Only "sexual advances" had to be unwelcomed under the charge given. The jury charge applied the requirement of the culpable mental state of "intentionally" only to the form of sexual harassment but not to the *quid pro quo* as required by *Sanchez II*. *Id.* at 686. Further, the trial court did not submit to the jury the culpable mental state of knowledge or require the jury to find that appellant was aware his conduct of a sexual nature, if any, was unwelcomed by the recipient. Thus, another essential element of the offense was missing from the jury instructions. *See Sanchez II*, 995 S.W.2d at 687, 688. As noted earlier, the trial court, with regard to other statutory elements, used in its jury charge the pluralized phrases "rights, privileges, powers, and immunities" without definition or limitation. The phrase was so broad that the

Court of Criminal Appeals used the broader phrase "anything of value to that person" as a substitute for purposes of its opinion. *Id.* at 686. If the court had difficulty with the phrase certainly the jury would have had difficulty in deciphering and applying it.

We need not review the evidence or the jury argument except to note that the jury charge set the stage for the prosecutor's argument for a non-unanimous verdict. All the factors of *Almanza* contribute to our conclusion. We find nothing in the instant case that would cure the deficiency of authorizing the jury to convict without finding all of the essential elements of the offense. There was egregious harm which deprived appellant of a fair and impartial trial. In so concluding, we have applied the holding of *Ovalle*, 13 S.W.3d at 787, and its progeny that no party should have the burden to prove harm from an error, and that ordinarily there is no way to prove actual harm.

A jury charge is fundamentally defective if it authorizes a conviction without requiring the jury to find all the elements of an offense beyond a reasonable doubt.[24] *Evans*, 606 S.W.2d at 883. Because the jurors were not charged on all the essential elements of section 39.03(a)(3)(c) as interpreted by the Court of Criminal Appeals in *Sanchez II*, it is possible the jurors convicted appellant for activity or conduct that is constitutionally protected; therefore, appellant's conviction may not stand. *See Morehead v. State*, 807 S.W.2d 577, 581 (Tex.Crim.App.1991) (setting aside a conviction because the case had not been submitted to the jury in accordance with the narrowing construc-

tion given section 42.05 of the penal code in that very opinion). We will sustain the first unassigned error. The jury charge was so egregious that appellant was harmed by being deprived of a fair and impartial trial.

### Second Unassigned Error

We review another unassigned error relating to the jury charge which is within the authority of this court to consider. The trial court submitted to the jury ten separate and distinct offenses under section 39.03(a), (c); only a general jury verdict of guilt was received. Because of the possibility of a non-unanimous jury verdict by the submission of separate offense under these circumstances, there was error in the jury charge. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App. 2000). There was no objection to the jury charge, but we conclude that egregious harm was shown under the factors of *Almanza* as earlier discussed.

The rule of unanimity arose during the Middle Ages. *Apodaca v. Oregon*, 406 U.S. 404, 407, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). By 1367, jury unanimity in criminal trials in England was a settled rule. *Rice v. State*, 311 Md. 116, 532 A.2d 1357, 1362 n. 6 (1987); (*citing* W. Holdsworth, A HISTORY OF ENGLISH LAW 318 (1956); Thayer, *The Jury and Its Development, Part II* 5 HARV. L.REV. 295, 296–97 (1892)). By the time the Bill of Rights was adopted in this country, unanimity had long been established as one of the attributes of a jury conviction at common law. *Johnson v. Louisiana*, 406 U.S. 366, 371, 92 S.Ct. 1635, 32 L.Ed.2d 162 (1972) (Powell, J., concurring). Unanimity has long been an

---

**24.** It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. These standards reflect a broader premise that has never been doubted in our constitutional sys-

tem that a person cannot incur the loss of liberty without notice and a meaningful opportunity to defend. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

indispensable feature of the federal jury trial system. *See Andres v. United States,* 333 U.S. 740, 748–49, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). While the Sixth Amendment to the United States Constitution is assumed to require unanimous verdicts in federal criminal trials, *Andres,* 333 U.S. at 748, 68 S.Ct. 880 and is applicable to the states by virtue of the Fourteenth Amendment, *Duncan v. Louisiana,* 391 U.S. 145, 149–50, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the due process clause does not impose the rule upon the states. *Apodaca,* 406 U.S. at 411–12, 92 S.Ct. 1628.

 It appears, however, from our Texas Constitution and statutory laws that the rule of unanimity applies in Texas criminal trials. Tex. Const. arts. I, § 19; art. V, § 13; Tex.Code Crim. Proc. Ann. arts. 36.29(a), 37.07, § 3(c) (Vernon Supp. 2004–05); *see also Sanchez v. State,* 23 S.W.3d 30, 33 (Tex.Crim.App.2000); *Molandes v. State,* 571 S.W.2d 3, 4 (Tex.Crim. App.1978); *Hanson v. State,* 55 S.W.3d 681, 693 (Tex.App.-Austin 2001, pet. ref'd). Texas case law makes clear that unanimous verdicts are required in all criminal cases. *See Brown v. State,* 508 S.W.2d 91, 93 (Tex.Crim.App.1974). If a criminal trial jury does not agree unanimously on the issue of guilt, then the trial court must declare a mistrial. *See Henderson v. State,* 593 S.W.2d 954, 956 (Tex.Crim.App. 1980); *Stanton v. State,* 535 S.W.2d 182, 183 (Tex.Crim.App.1976).

A unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense" which requires "more than a mere agreement on a viola-tion of a statute." *Francis,* 36 S.W.3d at 125. "The evident purpose of the statute [Tex.Code Crim. Proc. Ann. art. 37.07, § 3(c) ] is to ensure that thorough jury deliberations does not cease once a simple majority is achieved, thereby increasing the reliability of the verdicts ultimately reached." *Sanchez v. State,* 23 S.W.3d 30, 33 (Tex.Crim.App.2000); *see also United States v. Lopez,* 581 F.2d 1338, 1341 (9th Cir.1978).

A jury in a Texas district court must normally be composed of twelve persons. *See* Tex.Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp.2004–05); Tex. Gov't Code. Ann. art. 62.201 (Vernon 2005); *Hatch v. State,* 958 S.W.2d 813, 814–16 (Tex.Crim. App.1997). The instant district court jury was composed of twelve persons,[25] and the trial court instructed the jury that its verdict must be unanimous. The trial court submitted the ten acts alleged as separate offenses disjunctively.

 A trial court, of course, may submit a disjunctive jury charge and obtain a general verdict where the alternate theories involve the commission of the "same" offense or a single offense on the same date, and the evidence supports one of the alternate theories. *See Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991) and *see also Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim.App.1999); *McDuff v. State,* 939 S.W.2d 607, 614 n. 2 (Tex.Crim.App. 1997); *Fuller v. State,* 827 S.W.2d 919, 931 (Tex.Crim.App.1992); *Frieling v. State,* 67 S.W.3d 462, 467 (Tex.App.-Austin 2002, pet. ref'd); *Barnes v. State,* 62 S.W.3d 288,

---

25. At the time of appellant's trial in 1996 article V, section 13 of the Texas Constitution authorized nine jurors in district court in cases below the grade of felony, such as the instant case. *See* footnote 5, supra. Article V, section 13 was amended in 2001 to make its terms gender neutral. *See* Act of May 15, 2001, 77th Leg., R.S., H.J.R. 75, article 2 § 2.04 2001 Tex. Gen. Laws 6709, 6715 adopted November 2001. Article V, section 13 was again amended in 2003 to provide for six jurors in district court when the criminal offense was of a grade less than felony. *See* Act of May 30, 2003, 78th Leg., R.S., H.J.R. 44, 2003 Tex. Gen. Laws 6232 adopted in September 2003.

302 (Tex.App.-Austin 2001, pet. ref'd). However, because of the possibility of a non-unanimous jury verdict "separate offenses" may not be submitted to the jury in the disjunctive. *Francis,* 36 S.W.3d at 124–25; *Hisey v. State,* 129 S.W.3d 649, 651–52 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd), 161 S.W.3d 502 (Tex.Crim. App.2005); *Ngo v. State,* 129 S.W.3d 198, 199–201 (Tex.App.-Eastland 2004) *aff'd,* 2005 WL 600353 (Tex.Crim.App. Mar.16, 2005); *In re M.P.,* 126 S.W.3d 228, 231 (Tex.App.-San Antonio 2003, no pet.); *Clear v. State,* 76 S.W.3d 622, 624 (Tex. App.-Corpus Christi 2002, no pet.).

The trial court submitted a jury charge authorizing a conviction upon one dispositive finding among the ten separate acts as set forth in the indictment. In effect, the trial court instructed the jury, *inter alia,* that a conviction for sexual harassment—official oppression could be based on one unit of prosecution such as appellant telling the complainant to "put on lipstick." The complainant testified that the alleged acts occurred at different times over a period from August 1, 1994 to February 15, 1995, except October and November, 1994 when none occurred. Under the court's charge, any one of the ten acts occurring at any time would alone justify the conviction if all other elements were also proven beyond a reasonable doubt. There is no element of a course of continuing conduct required in the offense alleged. *Cf. State v. Rogers,* 138 S.W.3d 524, 526 (Tex.App. Houston [14th Dist.] 2004, no pet.). Certainly no such element was alleged or submitted to the jury. *Id.* Any one of the ten acts if supported by the evidence and applicable law could alone sustain appellant's conviction if there was a unanimous jury verdict on one act.

The prosecutor in his jury argument at the guilt/innocence stage of the trial told the jurors that two of them could believe appellant committed one of the acts alleged, three members could believe appellant committed only another act alleged, and the balance could believe a third act was committed by appellant. The prosecutor then added:

As long as you all believe in some manner, as we have alleged in the indictment, that he committed sexual harassment that is okay, even though you may not jive, or you may not be unanimous on the specifics, so long as you all believe it in some manner, that is sufficient for your unanimous verdict.

There were no cautionary instructions in the jury charge to avoid a non-unanimous verdict.

The instant case is similar to *Clear,* 76 S.W.3d at 623–24, where the trial court submitted three separate offenses of aggravated sexual assault disjunctively and accepted a general verdict after the prosecutor's jury argument about the jury being able to legally split their verdict. There, as here, despite the absence of an objection, the conclusion must be that egregious harm has been shown in light of the factors set forth in *Almanza,* 686 S.W.2d at 171, and in view of *Ovalle,* 13 S.W.3d at 787. We sustain this second unassigned error in the jury charge.

In view of our disposition of this cause, we need not reach appellant's other points of error not previously answered.

**CONCLUSION**

The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.